# ATLANTIC LUMBER CO. *v.* COMMISSIONER OF CORPORATIONS AND TAXATION OF MASSA-CHUSETTS.

No. 715.   Argued April 2, 1936.—Decided May 25, 1936.

*Mr. Robert C. McKay* for appellant.

*Mr. James J. Ronan,* Assistant Attorney General of Massachusetts, with whom *Mr. Paul A. Dever,* Attorney General, was on the brief, for appellee.

MR. JUSTICE SUTHERLAND delivered the opinion of the Court.

A Massachusetts statute (Gen. Laws, Ter. ed., c. 63, §§ 39–43) imposes upon a foreign corporation, with respect to the carrying on or doing of business by it within the commonwealth, an excise in a sum to be ascertained as the statute provides. So far as the present case is concerned, the amount of the excise is a specified percentage of the value of the corporate excess employed by the corporation within the commonwealth. Such corporate excess (§ 30, par. 4) means, in the case of a foreign corporation, such proportion of the fair value of its capital stock as the value of the assets employed in the commonwealth bears to the value of its total assets, less certain deductions. Under this statute appellant's tax was fixed at approximately $1,500. We find nothing in the record to justify the conclusion that the amount of the tax was not fairly arrived at under the provisions of the statute as construed by the court below, or that it was so allocated as to result in imposing a tax upon property outside the state; and the only question is whether the tax constitutes an unconstitutional burden upon interstate commerce. The court below, sustaining the action of the state board of tax appeals, held that the exaction was an excise for the privilege of having a place for the transaction of intrastate business in the state with the protection of state law and the appertaining advantages;

and that the effect upon interstate commerce was at most incidental and remote. 197 N. E. 525.

Appellant is a corporation engaged in the wholesale lumber business, and is organized under the laws of Delaware. Its principal office is in Massachusetts, where it also maintains a sales office. Its Massachusetts office is used as headquarters for salesmen, who solicit orders in Massachusetts and other states. In that office it carries on correspondence and other business activities in connection with orders for and shipments of goods for the designated territory. Orders are accepted at the Massachusetts office, and are filled from the distributing yard of the company or the mill of a subsidiary outside the state. Remittances from its customers are made to the Massachusetts office. No stocks of lumber are kept in that state; and the only tangible property in the state is office furniture and equipment and salesmen's automobiles. Appellant has bank accounts in Boston, New York City, Buffalo, Brooklyn, and Toronto, Canada, the Boston account being the most active. The corporate books and records are kept in Massachusetts, where its treasurer is located, its directors' meetings are held, and dividends are declared. Dividends, so far as declared, have been paid out of the Boston account.

Appellant owns practically all the stock of three subsidiaries. Two of them are engaged in cutting timber and manufacturing lumber—one in Tennessee, Arkansas, and Louisiana, and the other in South Carolina. The third subsidiary simply holds title to timber lands in Louisiana.

If appellant did nothing but transact interstate business, the tax would constitute a burden upon that commerce, and could not stand under the commerce clause of the Constitution. *Alpha Cement Co. v. Massachusetts,* 268 U. S. 203; *Cheney Brothers Co.* v. *Massachusetts,* 246 U. S. 147, 153; *Ozark Pipe Line Corp.* v. *Monier,* 266 U. S. 555, 562 *et seq.*

But such is not the case. Although organized in Delaware, so far as the record shows appellant does not function there but in Massachusetts, to which state the exercise of its corporate powers was transferred and is confined. In the *Champion Copper Company* case, decided by this court in *Cheney Brothers Co.* v. *Massachusetts, supra,* p. 155, a Michigan corporation maintained an office in Boston, pursuant to a provision in its articles of association. The proceeds of its business in Michigan were deposited in Boston banks, which, after paying salaries and expenses, were distributed as dividends from the Boston office. Directors' meetings were held frequently during each year at the Boston office, at which meetings reports from the treasurer and general manager were received, dividends were voted, officers were elected, and other corporate duties were discharged. This court held—"These corporate activities in Massachusetts are not interstate commerce and may be made the basis of an excise tax by that State."

The same decision involved a similar tax imposed upon another Michigan corporation, the Copper Range Company. That company also maintained an office in Boston. It was, like the appellant here, a holding company. In Massachusetts it held stockholders' and directors' meetings, kept corporate records and books of account, received dividends from its stock holdings, deposited the money in Boston banks, and paid the same out, after deducting salaries and expenses, in dividends to its stockholders. We held—"The exaction of a tax for the exercise of such corporate faculties is within the power of the State. Interstate commerce is not affected."

The decision in respect of those companies covers the present case; and since that decision has never been overruled or qualified, it would be unnecessary to go further, except for *Ozark Pipe Line* v. *Monier, supra,* upon which appellant confidently leans. The situation there,

however, was quite different from that presented in the present case or in the cases of the two Michigan corporations just mentioned—a difference plainly recognized by the opinion in the *Ozark* case. There, a Maryland corporation owned and operated a pipe line extending from Oklahoma through Missouri to Illinois, by which crude petroleum was carried from Oklahoma to Illinois. No oil was received or delivered in Missouri. The license issued by the state was to engage "exclusively in the business of transporting crude petroleum by pipe line." The company, it is true, maintained its principal office in Missouri and there kept its books and bank accounts, paid its employees, purchased supplies, employed labor, maintained telephone and telegraph lines, and carried on various other activities; but all were linked exclusively to the pipe line and operated only to further the flow of oil in interstate commerce. Neither property nor activities were anything more than aids to the operation of the pipe line; and together with that line they combined to constitute in practical effect an instrumentality of that commerce. Thus, the burden of the tax which the State imposed fell upon interstate transportation immediately and directly, while here the effect upon interstate commerce, so far as there is any, is remote and incidental—a distinction which, in respect of such legislation as we are now considering, marks the line between a tax which is valid and one which is not.

*Judgment affirmed.*