STONE, Chairman of Tax Commission, *v.* MEMPHIS NATURAL GAS CO.

(In Banc. Feb. 24, 1947.)

[29 So. (2d) 268. No. 36329.]

**J. H. Sumrall**, of Jackson, for appellant.

672

**B. L. Tighe, Jr.,** of Jackson, and **Canada, Russell & Turner** and **Edward P. Russell,** all of Memphis, Tenn., for appellee.

Argued orally by **J. H. Sumrall**, for appellant, and by **B. L. Tighe, Jr.**, for appellee.

**Griffith, J.**, delivered the opinion of the court.

Appellee, a Delaware corporation, owns and operates a natural gas pipe line running from the Monroe gas field in Louisiana to Memphis in the State of Tennessee, and beyond. The pipe line enters Mississippi at a point a few miles south of Greenville, and runs thence, in this State, towards the north in a general direction parallel with the Mississippi River, and enters Tennessee at a point almost directly south of Memphis. The map of the line, made a part of the record, shows that there are approximately 135 miles of it in this State, and that the system includes two compressing stations at points in this State.

There is a stipulation in the record covering the further facts, and these are that appellee company is not, and has not been, engaged in any intrastate commerce in Mississippi, but that its business, so far as concerns this State, has been interstate solely and exclusively; that it has only one customer in the State, and to this customer it delivers gas wholesale, under a contract made in another state; that appellee company has not been domesticated or qualified as a foreign corporation with the right to do intrastate business; has no agent for service of process and has not had any such agent, and has maintained no office, in this State; and that it has no employes or representatives

in this State other than those necessary to maintain the pipe line and its related facilities.

The State, through its Tax Commission, has demanded of appellee company the payment of the corporation franchise tax imposed under Secs. 9312-9340, Code 1942, for the years 1942, 1943 and 1944, and has entered its order adjudging appellee liable therefor, from which order appellee under Sec. 9328, has appealed for a review by the courts, contending that inasmuch as appellee does no intrastate business whatever in Mississippi, and is not qualified to do any intrastate business therein, no tax of any kind can be levied by the State against it other than the ad valorem taxes which it has always fully paid—that any other tax, and particularly a franchise tax, would be to tax interstate commerce.

The franchise tax here sought to be collected by the State is not a tax upon ''doing business'' as that term is ordinarily understood in the purely commercial sense, but is that which is defined in the statute Secs. 9312 and 9314, as follows: ''When the term 'doing business' is used in this Act, it shall mean and include each and every act, power or privilege exercised or enjoyed in this State, as an incident to, or by virtue of the powers and privileges acquired by the nature of such organization, whether the form of existence be corporate, associate, joint stock company or common law trust.''

It is to be seen that there is no attempt to tax interstate commerce as such, but the levy is an exaction which the State requires as a recompense for its protection of lawful activities carried on in this State by the corporation, foreign or domestic, activities which are incidental to the powers and privileges possessed by it by the nature of its organization—here the local activities in maintaining, keeping in repair, and otherwise in manning the facilities of the system throughout the 135 miles of its line in this State.

This statutory definition was first approved in the connection here involved as within the power of the State

in Stone v. Interstate Natural Gas Co., 5 Cir., 103 F. (2d) 544, affirmed 308 U. S. 522, 60 S. Ct. 292, 84 L. Ed. 442. Subsequently, in a connection equally pertinent in principle, it was approved and sustained by this Court in Stone v. General Contract Purchase Corp., 193 Miss. 301, 312, 7 So. (2d) 806, 140 A. L. R. 1029, and in Stone v. General Electric Contracts Corp., 193 Miss. 317, 7 So. (2d) 811; it being further held in the latter case that when the incidental local activities come within the definition, it would be immaterial that the foreign corporation had no local agents, and has no office, and is not qualified to do any intrastate business in this State.

It has often been observed in times past that interstate commerce should pay its way, should be made to bear a fair share of the cost of local government whose protection it enjoys, but outside of ad valorem taxes and until recently most efforts to make it pay its way have met with failure. In late years, however, there is a tendency to uphold local taxation when it does not bear directly upon interstate commerce as commerce, or when indirect, it has no substantial effect to block or impede the free flow of such commerce.

And more recently there has been a pronounced trend that, in order to make a more reasonable accomodation between local needs and the dominant requirement of freedom in the national commerce, recognition shall be given to a rule as follows: That although a particular activity may be essential to the continued full and unimpeded flow of commerce between the states as regards a particular commodity or other matter of such commerce, yet if that activity is of a substantial character, and is one which actually and distinctly happens in the particular State and must be, and is, protected by that State regardless of the ultimate purpose of the activity, then for the purpose of laying a tax as a recompense for the local protection afforded, the State may detach the activity so long as the exaction on account of it is not made a pretext to impose a burden which would have the effect, beyond

that which is remote or unsubstantial, to interfere with the national interests.

The present case may be reduced, therefore, to two questions: (1) Are the incidental local activities carried on by appellee corporation in this State substantial in nature and extent,—the active maintenance, supervision and repair in this state of 135 miles of pipe line and its related equipment? An affirmative answer to that question is obvious. (2) Does the franchise tax here demanded amount to enough to have any substantial effect to block or impede the free flow of commerce, or is it at all out of reasonable proportion to the services and protection which must be furnished by the State in and about the stated local activities? The franchise tax demanded is approximately $3,400 per annum, whereas the ad valorem taxes are approximately $82,000 a year, whence the obvious answer to this last question must be in the negative.

Reversed and judgment here for appellant.