## MEMPHIS NATURAL GAS CO. *v.* STONE, CHAIRMAN, STATE TAX COMMISSION.

No. 94.  Argued December 8, 1947.—Decided June 21, 1948.

*Edward P. Russell* argued the cause for petitioner. With him on the brief was *B. L. Tighe, Jr.*

*J. H. Sumrall* argued the cause and filed a brief for respondent.

Mr. Justice Reed announced the judgment of the Court and an opinion in which Mr. Justice Douglas and Mr. Justice Murphy join.

The Memphis Natural Gas Company is a Delaware corporation which owns and operates a pipe line for the transportation of natural gas.  The line runs from the

Monroe Gas Field in the State of Louisiana through the states of Arkansas and Mississippi to Memphis and other points in the State of Tennessee. Approximately 135 miles of the pipe line lie within Mississippi; at two points within that state there are compressing stations. It is stipulated that the Gas Company has never engaged in any intrastate commerce in Mississippi; that it has only one customer within the state, the Mississippi Power and Light Company, to which it sells gas from its interstate line at wholesale from several delivery points; that the Gas Company has never qualified under the laws of Mississippi to do intrastate business within that state; that it has no agent for the service of process and that it has no office within the state; and that its only employees and representatives in Mississippi are those necessary to maintain the pipe line and its auxiliary appurtenances.

The Gas Company has paid all ad valorem taxes assessed against its property in Mississippi pursuant to the state law. In addition to the ad valorem taxes, Mississippi imposes a "franchise or excise tax" upon all corporations "doing business" within the state.[1] For the

---

[1] Miss. Code § 9313 (1942): "There is hereby imposed . . . a franchise or excise tax upon every corporation . . . now existing in this state, or hereafter organized, created or established, under and by virtue of the laws of the State of Mississippi, equal to $1.50 for each $1,000.00 or fraction thereof, of the value of the capital used, invested or employed in the exercise of any power, privilege or right enjoyed by such organization within this state, except as hereinafter provided. It being the purpose of this section to require the payment to the state of Mississippi, this tax for the right granted by the laws of this state to exist as such organization, and enjoy, under the protection of the laws of this state, the powers, rights, privileges and immunities derived from the state by the form of such existence."

§ 9314: "For the year 1940 and annually thereafter, there shall be and is hereby imposed, levied and assessed upon every corporation, association or joint stock company, as hereinbefore defined, organized and existing under and by virtue of the laws of some other state, territory or country, or organized and existing without any specific

purpose of the Act, "doing business" is defined "[to] mean and [to] include each and every act, power or privilege exercised or enjoyed in this State, as an incident to, or by virtue of the powers and privileges acquired by the nature of such organization." [2]   The tax is "equal to $1.50 of each $1,000.00 or fraction thereof of the value of capital used, invested or employed" within the state.

The Gas Company filed a petition for review by the State Tax Commission of Mississippi of the franchise tax assessed against it for the years 1942, 1943 and 1944 by the State Tax Commissioner.   In this petition the Gas Company argued that the imposition of the tax by the state was an act prohibited by the Commerce Clause of the Federal Constitution.   From an order of the Tax Commission approving the action of the Commissioner, the Gas Company appealed to the Circuit Court of Hinds County, Mississippi.   That court reversed the Tax Commission, but was itself reversed by the Supreme Court of Mississippi.   The Supreme Court said that Mississippi had made "no attempt to tax interstate commerce as such, but the levy is an exaction which the State requires as a recompense for its protection of lawful activities carried on in this State by the corporation, foreign or domestic, activities which are incidental to the powers and privileges possessed by it by the nature of its organization—here the local activities in maintaining, keeping in repair, and otherwise in manning the facilities of the

statutory authority, now, or hereafter doing business within this state, as hereinbefore defined, a franchise or excise tax equal to $1.50 of each $1,000.00 or fraction thereof of the value of capital used, invested or employed within this state, except as hereinafter provided.   It being the purpose of this section to require the payment of a tax by all organizations not organized under the laws of this state, measured by the amount of capital or its equivalent, for which such organization receives the benefit and protection of the government and laws of the state."

[2] Miss. Code § 9312 (1942).

system throughout the 135 miles of its line in this State." 201 Miss. 670, 674, 29 So. 2d 268, 270. It argued that the state tax did not bear directly upon interstate commerce and that any burden imposed upon that commerce was remote and unsubstantial. It concluded that the local tax was not unconstitutional and ordered that the taxes in question, plus penalties, be paid by the Gas Company. A petition for certiorari, under § 237 (b), Judicial Code, was filed in this Court by the Gas Company on May 17, 1947. It presented the question as to whether the judgment violated the Commerce Clause by requiring a foreign undomesticated corporation, engaged in interstate commerce, to pay the tax. That petition was granted June 16, 1947. 331 U. S. 802.

The suggestion is made that by the stipulation of facts in the trial court, Mississippi concedes the truth of an allegation of the challenged petition before the State Tax Commission reading as follows:

"To carry on interstate commerce is not a franchise or a privilege granted by the state; it is a right which every citizen of the United States is entitled to exercise under the constitution and laws of the United States; and the accession and possession of mere corporate facilities, as a matter of convenience in carrying on their business, cannot have the effect of depriving it of such right, unless congress should see fit to interpose some contrary regulation. Your Petitioner obtains no protection from the State of Mississippi and acquires no powers or privileges in its interstate activity other than the protection afforded your Petitioner by virtue of the payment of an ad valorem tax on the property used by the Company wholly in interstate commerce."

It is said that because of this concession Mississippi cannot exact a tax from petitioner as the state "affords nothing to this petitioner for which it could ask recompense

by way of a tax." The pertinent part of the stipulation reads: "That all of the facts stated in said petition are true and no proof of the same shall be required in this cause." No contention as to the concession is presented to us by the petition for certiorari, assignment of errors or brief. Petitioner's contention is that the tax levied against it is invalid under the Commerce Clause. Petitioner's failure to raise the question alone would justify a refusal here to consider the contention. See *Connecticut R. Co.* v. *Palmer,* 305 U. S. 493, 496; *Kessler* v. *Strecker,* 307 U. S. 22, 34. The answer to the suggestion, however, seems to us clear. The argument is that the Supreme Court of Mississippi must be reversed because the tax before us "is a tax on the privilege of engaging in the doing of interstate business within the State, and such a tax is . . . invalid under the Commerce Clause." This conclusion seems to be reached by the following analysis. The stipulation between the Company and the State Tax Commission is read as if the phrase "in its interstate activity" modified only the words "powers" and "privileges" and not the word "protection." If that is a proper construction of this stipulation, then the parties have agreed that the Company has obtained by the tax "no protection from the State . . . other than the protection afforded . . . by virtue of the payment of an ad valorem tax . . . ." The dissent then concludes that the imposition of the ad valorem taxes "exhausted" the state's taxing power and, consequently, that the tax "is a tax on the privilege of engaging in interstate business" and, as such, "invalid under the Commerce Clause."

The state Supreme Court construed the tax as "an exaction . . . as a recompense for . . . protection of . . . the local activities in maintaining, keeping in repair, and otherwise in manning the facilities of the system throughout the 135 miles of its line in this State." As we are bound by the construction of the state statute by the state

court, it is idle to suggest that the tax is on "the privilege of engaging in interstate business." Nor can this result be changed by the suggestion that the tax cannot be on any local incidents "because they have already been fully taxed." The local incidents, spoken of by the Supreme Court of Mississippi, were not the taxable events selected for the imposition of the ad valorem tax. These local incidents were the basis for the franchise or excise tax now in controversy. No reason is perceived why Mississippi cannot exact this different tax for the same protection. It is as though the ad valorem rate had been increased. The power to levy such a new tax is not and could not be questioned except as an interference with commerce. The legal question remains as to whether a state can exact a tax on those activities under the Commerce Clause.

The facts of this case present again the perennial problem of the validity of a state tax for the privilege of carrying on, within a state, certain activities admittedly necessary to maintain or operate the interstate business of the taxpayer. This transportation by pipe line with deliveries within the state at wholesale only is interstate business. *Panhandle Eastern Pipe Line Co.* v. *Comm'n,* 332 U. S. 507, 513, and cases cited. Notwithstanding the power granted to Congress by the Commerce Clause to regulate the taxation of interstate commerce, if it so desires,[3] that body generally has left the determination to the courts of what state taxes on or affecting commerce were permissible and what impermissible under the Commerce Clause. The states have sought by taxation to collect from the instrumentalities of commerce compensation for the protection and advantages rendered to commerce by state governments. The federal courts have sought over the years to determine the scope of a state's power to tax in the light of the competing inter-

---

[3] *Prudential Ins. Co.* v. *Benjamin,* 328 U. S. 408, 429.

ests of interstate commerce, and of the states, with their power to impose reasonable taxes upon incidents connected with that commerce. See *Gwin, White & Prince, Inc.* v. *Henneford,* 305 U. S. 434, 441. We continue at that task, characterized long ago as an area of "nice distinctions." *Galveston, Harrisburg & S. A. R. Co.* v. *Texas,* 210 U. S. 217, 225.

There is no question here of Due Process. The Gas Company's property is in the taxing state where the taxable incidents occurred. *McLeod* v. *Dilworth Co.,* 322 U. S. 327, 329. See *Nippert* v. *City of Richmond,* 327 U. S. 416, 423. Nor is the measure used to calculate the amount of the tax challenged. That measure is $1.50 on each thousand dollars of capital employed within Mississippi. *Southern Gas Corp.* v. *Alabama,* 301 U. S. 148, 156, Third. The attack on the Mississippi statute is that it violates the Commerce Clause by putting a tax on the commerce itself.

The local incidents covered by the definition of doing business hereinbefore set out, § 9312, Mississippi Code, *supra,* were said by the Supreme Court in this case to be "the local activities in maintaining, keeping in repair, and otherwise in manning the facilities of the system" in Mississippi. 201 Miss. 670, 674, 29 So. 2d 268, 270.[4]

---

[4] Such local incidents form a sound basis for taxation by a state of foreign corporations doing interstate business. For example, we have upheld state taxes on sales after completion of the interstate transit, *McGoldrick* v. *Berwind-White Coal Mining Co.,* 309 U. S. 33; on production of electricity for interstate commerce, *Utah Power & L. Co.* v. *Pfost,* 286 U. S. 165, compare *Fisher's Blend Station, Inc.* v. *Tax Comm'n,* 297 U. S. 650, 655; a privilege tax on the operation of machines for the production of electricity to drive gas in interstate commerce, *Coverdale* v. *Arkansas-Louisiana Pipe Line Co.,* 303 U. S. 604; a use tax on rails shipped interstate for immediate incorporation into an interstate transportation system, *Southern Pacific Co.* v. *Gallagher,* 306 U. S. 167.

We have upheld a franchise tax on a foreign corporation authorized to do business and making sales in a state other than its actual or

The cases just cited in the note show that, from the viewpoint of the Commerce Clause, where the corporations carry on a local activity sufficiently separate from the interstate commerce, state taxes may be validly laid, even though the exaction from the business of the taxpayer is precisely the same as though the tax had been levied upon the interstate business itself.[5]  But the choice of a local incident for the tax, without more, is not enough. There are always convenient local incidents in every interstate operation.  *Nippert* v. *City of Richmond, supra,* at 423.  The incident selected should be one that does not lend itself to repeated exactions in other states.  Otherwise intrastate commerce may be preferred over interstate commerce.[6]  Again, where there is a state exaction for some intrastate privilege that discriminates against interstate commerce, it is invalid even though it is sufficiently disconnected from the commerce to be taxable otherwise.[7]

The Mississippi tax under consideration is not discriminatory.  It is levied, in addition to ad valorem taxes, on corporations created under Mississippi laws, those admitted to do business in Mississippi and those operating in

---

business domicile, *Ford Motor Co.* v. *Beauchamp,* 308 U. S. 331; a privilege tax on a foreign corporation doing business in the state upon a proportion of property in the taxing state that was computed by using interstate commerce as an element, *Hump Hairpin Co.* v. *Emmerson,* 258 U. S. 290; *Western Cartridge Co.* v. *Emmerson,* 281 U. S. 511; an excise on intrastate manufacturing, added to an ad valorem tax and measured by sales, including out of state, *American Mfg. Co.* v. *St. Louis,* 250 U. S. 459, and see Powell, 60 Harv. L. Rev. 501, 508 and 727, *Freeman* v. *Hewit,* 329 U. S. 249, 255; a license for storing goods at rest in the state under a transit privilege, *Independent Warehouses, Inc.* v. *Scheele,* 331 U. S. 70.

[5] See *Western Live Stock* v. *Bureau,* 303 U. S. 250, 254.

[6] See *Western Live Stock* v. *Bureau,* 303 U. S. 250, 255.

[7] See *Best & Co.* v. *Maxwell,* 311 U. S. 454; *Nippert* v. *City of Richmond, supra,* at 431–32.  Cf. *Aero Mayflower Transit Co.* v. *Board of Railroad Comm'rs,* 332 U. S. 495, 501–502.

the state without any authority from the state. See note 1, *supra*. Petitioner operated local compressor stations. We have heretofore held that the generation of electric energy for the operation of such stations was subject to state taxation without violation of the Commerce Clause. *Coverdale* v. *Arkansas-Louisiana Pipe Line Co.*, 303 U. S. 604. A glance at the activities, named above, listed by the Supreme Court of Mississippi, shows that there is no possibility of multiple taxation through the same exactions by other states. The amount of the tax is reasonable.[8] It is properly apportioned to the investment in Mississippi.[9]

However, a state tax upon a corporation doing only an interstate business may be invalid under our decisions because levied (1) upon the privilege of doing interstate business within the state,[10] or (2) upon some local event so much a part of interstate business as to be in effect a

---

[8] See *Hump Hairpin Co.* v. *Emmerson*, 258 U. S. 290, 295, and *Western Cartridge Co.* v. *Emmerson*, 281 U. S. 511, 514.

[9] See *Southern Gas Corp.* v. *Alabama*, 301 U. S. 148, 156, Third, and cases cited; *International Harvester Co.* v. *Evatt*, 329 U. S. 416, 422–23; *Aero Mayflower Transit Co.* v. *Board of Railroad Comm'rs*, 332 U. S. 495, 501–502.

[10] This Court has held many times that a state has no power to refuse or tax the privilege of doing interstate business. A foreign corporation, seeking or requiring no privilege from a state such as the power of eminent domain, the right to use public ways or beds of streams, and without federal charter or other federal statutory privilege, cannot be denied the right to enter a state, remain there and operate a purely interstate business without a state franchise. *Crutcher* v. *Kentucky*, 141 U. S. 47, 56; *International Textbook Co.* v. *Pigg*, 217 U. S. 91, 107 (3); *Dahnke-Walker Milling Co.* v. *Bondurant*, 257 U. S. 282. See also *California* v. *Pacific R. Co.*, 127 U. S. 1; *Luxton* v. *North River Bridge Co.*, 153 U. S. 525; *Colorado* v. *United States*, 271 U. S. 153, 164; *State ex rel. Board* v. *Stanolind Pipe Line Co.*, 216 Iowa 436, 445, 249 N. W. 366, 371.

tax upon the interstate business itself.[11]  Petitioner asserts that the Mississippi statute so offends.

*First.* This Court has drawn the distinction in the field of pipe line taxation between state statutes on the privilege of doing business where only interstate business was done and those upon appropriate local incidents.  In *Ozark Pipe Line Corp.* v. *Monier,* 266 U. S. 555, the Ozark Pipe Line Corporation operated an oil pipe line from Oklahoma, through Missouri to a point in Illinois. Oil was neither received nor delivered in Missouri.  This was interstate transportation.  *Interstate Natural Gas Co.* v. *Power Comm'n,* 331 U. S. 682, 689, and cases cited at note 12.  It had its principal office in Missouri. It had a license from Missouri authorizing it to engage " 'exclusively in the business of transporting crude petroleum by pipe line.' "  Page 561.  The state tax was an apportioned franchise tax.[12]  It was construed by this Court as a tax "upon the privilege or right to do

---

[11] *Freeman* v. *Hewit,* 329 U. S. 249, "because it taxes the very process of interstate commerce" (p. 253), it is "a direct imposition on that very freedom of commercial flow which for more than a hundred and fifty years has been the ward of the Commerce Clause" (p. 256); *Joseph* v. *Carter & Weekes Co.,* 330 U. S. 422, "Stevedoring, we conclude, is essentially a part of the commerce itself and therefore a tax . . . upon the privilege of conducting the business of stevedoring for interstate and foreign commerce, measured by those gross receipts, is invalid" (p. 433); this follows "a line of precedents outlawing taxes on the commerce itself" (p. 433).  *Galveston, Harrisburg & S. A. R. Co.* v. *Texas, supra* at 224.

See *Adams Mfg. Co.* v. *Storen,* 304 U. S. 307, 312, n. 11; see comments on *American Mfg. Co.* v. *St. Louis,* n. 4, *supra.*

[12] Mo. Rev. Stat. § 9836 (1919):

". . . Every corporation, not organized under the laws of this state, and engaged in business in this state, shall pay an annual franchise tax to the state of Missouri equal to one-tenth of one per cent. of the par value of its capital stock and surplus employed in business in this state . . . ."

business." Page 562. *Virginia* v. *Imperial Coal Co.,* 293 U. S. 15, 20. As such a tax upon a corporation doing only an interstate business, it was held invalid under the Commerce Clause.[13]

In *State Tax Commission* v. *Interstate Natural Gas Co.,* 284 U. S. 41, a pipe line ran from Louisiana, through Mississippi and back to Louisiana. Two local Mississippi distributors took gas in that state from the re-

---

[13] The opinion evoked a dissent by Justice Brandeis which pointed out that: "The tax assailed is not laid upon the occupation . . ."; nor "upon the privilege of doing business." Pp. 567–68. The Justice concluded that "a tax is not a direct burden merely because it is laid upon an indispensable instrumentality of such commerce," but that the contrary is true "where it is upon property moving in interstate commerce." P. 569. Compare *Ozark* with *Atlantic Lumber Co.* v. *Comm'r,* 298 U. S. 553.

The *Ozark* case has had a long history in this Court. Since 288 U. S., it has not been cited in a manner pertinent to our present issue, except to be distinguished, sometimes narrowly. In *Helson & Randolph* v. *Kentucky,* 279 U. S. 245, 249, and *State Tax Commission* v. *Interstate Natural Gas Co.,* 284 U. S. 41, 43, it was cited with approval for the proposition that a state cannot lay a tax on the occupation or the business of carrying on interstate commerce. In *Anglo-Chilean Nitrate Sales Corp.* v. *Alabama,* 288 U. S. 218, *Ozark* was relied upon to hold unconstitutional a state tax upon a corporation which was qualified to do intrastate business within the state but which in fact did only an interstate business. Cardozo, J., joined by Brandeis, J., and Stone, J., dissented on the ground that the tax could be supported as a tax laid upon the privilege to do intrastate business. *Ozark* was next before the Court in *Virginia* v. *Imperial Coal Co., supra,* a case involving a tax on tangible and intangible property situated and used within the state to carry on an exclusively interstate business. In that case it was distinguished on the ground that an ad valorem property tax, and not a privilege tax, was before the Court. In *Atlantic Lumber Co.* v. *Comm'r,* 298 U. S. 553, involving an excise tax on corporations doing business within Massachusetts, *Ozark* was again distinguished, this time on the ground that the Lumber Co. was engaged in local activities within the state and, therefore, that the burden imposed upon its interstate commerce was remote and incidental. Again, in *Southern Gas Corp.* v. *Alabama,* 301 U. S. 148,

spondent. Mississippi sought to tax the respondent under a privilege tax law that required the pipe line company to get a license to exercise the privilege desired, that is, to operate an interstate pipe line.[14] This Court held that the entire business of the respondent was interstate despite a claimed local activity by the reduction of pressure to deliver gas to the Mississippi distributors. It followed that the state license for the privilege of engaging in the business of operating a pipe line was an invalid burden under the Commerce Clause.[15]

*Ozark* was found to be inapposite because of factual differences. *Southern Gas* ruled upon the constitutionality of a tax assessed on the basis of the same tax that was before this Court in *Anglo-Chilean Nitrate Sales Corp.* v. *Alabama, supra*. The state tax was held constitutional by the *Southern Gas* case as a tax exacted for the privilege of doing an intrastate business by a company in fact engaging in intrastate business in Alabama.

[14] Miss. Gen. Laws (1930), c. 88, § 3: "Every person desiring to engage in any business, or exercise any privilege hereinafter specified, shall first, before commencing same, apply for, pay for, and procure from the proper officer a privilege license authorizing him to engage in the business, or exercise the privilege specified therein; and the amount of tax shown in the following schedules is hereby imposed for the privilege of engaging and/or continuing in the businesses set out therein."

*Id.*, § 163: "Upon each person engaging and/or continuing in this state in the business of operating a pipe line or transporting in or through this state oil, or natural, or artificial gas, through pipes, and/or conduits, a tax, as follows: [On each mile a varying tax that depended upon the diameter of the pipe]."

[15] The same rationale has led this Court at times to declare invalid similar taxes on foreign corporations, admitted to do business in a state and doing only an interstate business through activities within the state. The leading decisions supporting this view (*Cheney Brothers Co.* v. *Massachusetts,* 246 U. S. 147, and *Alpha Portland Cement Co.* v. *Massachusetts,* 268 U. S. 203) have been strictly limited. *Atlantic Lumber Co.* v. *Commissioner,* 298 U. S. 553; cf. *Southern Gas Corporation* v. *Alabama, supra,* at p. 156, and dissent in *Anglo-Chilean Nitrate Sales Corp.* v. *Alabama,* 288 U. S. 218, 229, at 237. In the *Cheney* case an excise tax for the privilege of doing

On the other hand, in *Interstate Natural Gas Co.* v. *Stone*, 308 U. S. 522, we affirmed *per curiam* a judgment of the Fifth Circuit in *Stone* v. *Interstate Natural Gas Co.*, 103 F. 2d 544, on the authority of *Southern Gas Corporation* v. *Alabama, supra* at 153, 156–57. The tax in question in the 308 U. S. case was exacted by the same Mississippi statute employed here. This differs from the Mississippi statute in the *Interstate* case in 284 U. S. The *Interstate* case in 308 U. S. differed from this present case, so far as is material, only in the fact that the foreign corporation filed a copy of its charter as a prerequisite to doing business in Mississippi and appointed an agent for the service of process. The page references in the *Stone* citation of the *Southern Gas* case show that this Court considered the Mississippi tax in the *Stone* case as one not on business but " 'on the privilege of exercising corporate functions within the State and its employment of its capital in [Mississippi].' " *Southern Gas Corp.* v. *Alabama, supra,* 153. In the *Southern Gas* case, page 155, the company did intra-

---

business in Massachusetts of an unapportioned percentage of its authorized capital stock (Mass. Acts, 1909, c. 490, Part III, § 56) was invalidated as being wholly on interstate commerce although it maintained "in Boston a selling office with one office salesman and four other salesmen who travel through New England. The salesmen solicit and take orders, subject to approval by the home office in Connecticut, and it ships directly to the purchasers. No stock of goods is kept in the Boston office, but only samples used in soliciting and taking orders. Copies and records of orders are retained, but no bookkeeping is done, and the office makes no collections. The salesmen and the office rent are paid directly from Connecticut and the other expenses of the office are paid from a small deposit kept in Boston for the purpose. No other business is done in the State." P. 153.

In the *Alpha Portland* case where, on the assumption that the taxpayer had obtained a right to do business in the state, under similar circumstances an unapportioned excise on the privilege to do business in Massachusetts was invalidated because a burden on commerce.

state business, but in the *Stone* case no intrastate business was done. Thus the local event of qualifying for intrastate business, which occurred in both *Southern Gas* and *Stone,* brought a different result from that in the *Ozark* case and in *Interstate,* 284 U. S., where the privilege or right to do interstate business was protected. Mississippi, through its Supreme Court, has declared that there is no attempt to tax the privilege of doing an interstate business or to secure anything from the corporation by this statute except compensation for the protection of the enumerated local activities of "maintaining, keeping in repair, and otherwise in manning the facilities." 201 Miss. 674, 29 So. 2d 270. Under § 9314, quoted in note 1, in the light of that statute's definition of "doing business" set out on pp. 81–82, *supra,* this is a reasonable meaning to give the taxing statute. We must accept the state court's interpretation.[16] We therefore conclude that the Mississippi tax here involved is not upon the privilege of doing an interstate business.

*Second.* We come now to the second question. That is whether the challenged excise for carrying on within the state the aforementioned activities of maintenance, repair and manning by a corporation engaged solely in interstate commerce may be taxed. The answer on this point depends upon whether these activities are so much a part of the interstate business as to be under the protection of the Commerce Clause as this Court has construed it.[17] In this case the local activities are those involved in the maintenance of the pipe line. This tax is not an unapportioned tax on gross receipts from the commerce itself. It is measured by a proportion of the capital employed within the state. It cannot be duplicated in other states.

---

[16] *St. Louis S. W. R. Co.* v. *Arkansas,* 235 U. S. 350, 362; *Southern Gas Corp.* v. *Alabama, supra* at 153, First; *Skiriotes* v. *Florida,* 313 U. S. 69, 79; *Caldarola* v. *Eckert,* 332 U. S. 155, 158.

[17] See note 11, *supra.*

Compare *Western Live Stock* v. *Bureau,* 303 U. S. 250, 255. In *Ozark Pipe Line* v. *Monier, supra,* this Court, at p. 565, spoke of such activities as set out below.[18]  If it was intended to say that such in-the-state activities as there described could not be taxed, we disagree with that conclusion.  We are inclined to the view that the fact that the tax there under consideration was considered a tax "upon the privilege or right to do business," led the Court to point out that as the local activities were essential to that business, they were not taxable activities. The pipe line itself and all appurtenances are essential, yet an ad valorem tax can be laid.[19]

In taxation, we do not have the problems raised by many decisions on state regulations alleged to impede

---

[18] This Court said, 266 U. S. at 565: "The business actually carried on by appellant was exclusively in interstate commerce.  The maintenance of an office, the purchase of supplies, employment of labor, maintenance and operation of telephone and telegraph lines and automobiles, and appellant's other acts within the State, were all exclusively in furtherance of its interstate business; and the property itself, however extensive or of whatever character, was likewise devoted only to that end.  They were the means and instrumentalities by which that business was done and in no proper sense constituted, or contributed to, the doing of a local business."  See also *Heyman* v. *Hays,* 236 U. S. 178, 185.

[19] *Cleveland, C., C. & St. L. R. Co.* v. *Backus,* 154 U. S. 439, 445:

"The rule of property taxation is that the value of the property is the basis of taxation.  It does not mean a tax upon the earnings which the property makes, nor for the privilege of using the property, but rests solely upon the value.  But the value of property results from the use to which it is put and varies with the profitableness of that use, present and prospective, actual and anticipated.  There is no pecuniary value outside of that which results from such use.  The amount and profitable character of such use determines the value, and if property is taxed at its actual cash value it is taxed upon something which is created by the uses to which it is put."

See also *Northwest Airlines* v. *Minnesota,* 322 U. S. 292; *Adams Express Co.* v. *Ohio,* 165 U. S. 194; *Western Union Tel. Co.* v. *Massachusetts,* 125 U. S. 530.

the free flow of commerce when not nationally uniform. *Southern Pacific Co.* v. *Arizona,* 325 U. S. 761. Regulations may be imposed by the state on commerce. *Panhandle Eastern Pipe Line Co.* v. *Public Service Comm'n, supra; Bob-Lo Excursion Co.* v. *Michigan,* 333 U. S. 28. When state taxation of activities or property within a state is involved, different considerations control. It is no longer a question of actual interruption of the operation of commerce. *Kelly* v. *Washington,* 302 U. S. 1, 14. Rather a prohibited tax exaction is one beyond the power of the state because the taxable event is outside its boundaries, *McLeod* v. *Dilworth Co., supra,* or for a privilege the state cannot grant. See note 10, *supra.* Is it bad because a tax on the commerce itself? We have sustained a fee for the privilege of using state courts, exacted by the state from a business licensed by the United States to handle customs charges. *Union Brokerage Co.* v. *Jensen,* 322 U. S. 202.[20] Likewise a special privilege tax upon an interstate automobile transportation company for the use of the state roads has been approved. *Aero Mayflower Transit Co.* v. *Board of Railroad Comm'rs,* 332 U. S. 495.

The Mississippi excise has no more effect upon the commerce than any of the instances just recited. The events giving rise to this tax were no more essential to the interstate commerce than those just mentioned or ad valorem

---

[20] In the *Union Brokerage* case we dealt not with an annual tax on franchises or licenses but with a state's single exaction from a foreign corporation for the right to use the courts of the state. The company was a customhouse broker engaged wholly in thus earning fees by " 'charges upon the commerce itself,' " p. 209. There were incidental activities in the state in furtherance of this main purpose, p. 208: "Union's business is localized in Minnesota, it buys materials and services from people in that State, it enters into business relationships, as this case, a suit against its former president, illustrates, wholly outside of the arrangements it makes with importers or exporters."

taxes. We think that the state is within its constitutional rights in exacting compensation under this statute for the protection it affords the activities within its borders. Of course, the interstate commerce could not be conducted without these local activities. But that fact is not conclusive. These are events apart from the flow of commerce. This is a tax on activities for which the state, not the United States, gives protection and the state is entitled to compensation when its tax cannot be said to be an unreasonable burden or a toll on the interstate business.

*Affirmed.*

MR. JUSTICE BLACK concurs in the judgment.

MR. JUSTICE RUTLEDGE, concurring.

In accordance with views which I have heretofore expressed,[1] it is enough for me to sustain the tax imposed in this case that it is one clearly within the state's power to lay insofar as any limitation of due process or "jurisdiction to tax" in that sense is concerned;[2] it is nondiscriminatory, that is, places no greater burden upon interstate commerce than the state places upon competing intrastate commerce of like character;[3] is duly apportioned, that is, does not undertake to tax any interstate activities

[1] See *McLeod* v. *Dilworth Co.*, 322 U. S. 327; *General Trading Co.* v. *Tax Comm'n, id.* 335; *Harvester Co.* v. *Dept. of Treasury, id.* 340, separate opinion, *id.* 349; *Freeman* v. *Hewit,* 329 U. S. 249, concurring opinion at 259.

[2] See 322 U. S. at 352, 353; *Nippert* v. *Richmond,* 327 U. S. 416, 423, 424.

[3] See Miss. Code § 9313 (1942), imposing a comparable tax, of identical amount, upon companies organized under Mississippi laws. Intrastate business done in the state obviously would be subject to one tax or the other, depending on whether the company doing it were organized under the state's laws or those of another state.

carried on outside the state's borders; [4] and cannot be repeated by any other state.[5]

In this view the tax is not different in any substantial respect, for purposes of the commerce clause's prohibitive application, from the apportioned tax upon gross receipts from interstate transportation levied by New York and sustained by the decision recently rendered in *Central Greyhound Lines* v. *Mealey,* 334 U. S. 653.[6] That tax is nonetheless one upon the commerce, although it is apportioned. The apportionment, however, guards it from the vice of taxing commerce done in other states and thus also from multiplication by them.[7] In my view the same consequence follows here, in practical effect, both for the bearing of the tax and for saving its validity.

It may be that for the purposes of this case there is little more than a verbal difference in so regarding the

---

[4] The statute, Miss. Code §§ 9313 and 9314 (1942), expressly measures and limits the tax by an amount "equal to $1.50 of each $1,000.00 or fraction thereof of the value of capital used, invested or employed *within this state* . . . ." (Emphasis added.)

[5] Cf. note 4. Apportionment in itself prevents taxation of extra-state "events" or portions of the business done, unless the apportionment is itself constitutionally invalid as not reflecting a sufficient approximation to what the state may be entitled, on the facts, to tax. Cf. Stone, C. J., dissenting in *Northwest Airlines* v. *Minnesota,* 322 U. S. 292, 315–316, and authorities cited.

[6] It is, of course, for New York to say whether its tax will be applied upon the apportioned basis permitted by the Court's opinion. There would seem to be little doubt that such an application will be made, in view of the state's alternative argument here for sustaining the tax to that extent in the event its unapportioned application should be found invalid.

[7] See *Freeman* v. *Hewit,* 329 U. S. 249, 266 (concurring opinion) and authorities cited.

That the apportionment in the one case is made in relation to mileage and in the other to the value of capital "used, invested or employed within this state" is of no significance, since the states have considerable latitude in the selection of fair methods of making apportionment. Cf. note 5.

tax and in looking at it as one not "upon" the commerce, although affecting it, but as being laid upon "incidents of the commerce" or "taxable events" taking place in Mississippi which are regarded as being "sufficiently separate from" the commerce, whether by reason of the apportionment or otherwise, to sustain the tax. To the extent that no greater difference is presently involved, I accept the Court's conclusions and its reasoning.

But the difference conceivably may be of large, indeed of controlling, importance for other cases. And, so far as this may be true, I am unable to revert to rationalizations which make merely verbal formulae without reflection of differences in substantive effects controlling in these matters.

The New York legs of the journey involved in the *Central Greyhound* case, *supra,* are interstate commerce, as much as those in New Jersey and Pennsylvania. They do not lose that character merely because an apportioned tax may be levied upon the gross receipts from them. The incidence of that tax is flatly on the commerce, though only on the local portion of it. So here I do not think that the local activities for the protection of which the Mississippi tax purports in terms to be laid become separate from the interstate business which petitioner conducts in Mississippi, either by reason of the apportionment or otherwise. But they are incidents of carrying on that business taking place in Mississippi and only there, for which Mississippi affords protection received from no other state or the United States. Nor can any other state give that protection. For that portion of the business and the protection given it, I think the state is entitled to levy such a tax as has been placed here. Nothing in the commerce clause or its great purposes forbids such an exaction. Nor is the state limited to a single exaction for different or indeed like protections

afforded, so long as each is safeguarded against prohibited effects upon commerce, as are those laid by Mississippi, and their aggregate cannot be shown to contravene the clause's purpose.

Accordingly, I concur in the Court's judgment.

MR. JUSTICE FRANKFURTER, with whom THE CHIEF JUSTICE, MR. JUSTICE JACKSON, and MR. JUSTICE BURTON concur, dissenting.

This litigation began before the State Tax Commission of Mississippi by a petition of the Memphis Natural Gas Company for a revision of the franchise tax assessed against that Company under the Franchise Tax Law of Mississippi. On judicial review of this administrative denial, the parties stipulated that "all of the facts stated in said petition are true and no proof of the same shall be required in this cause." [1] The decision therefore must be based on the undisputed allegations of the petition.

Petitioner, a Delaware corporation, owns and operates a pipeline for the transportation of natural gas running from the gas fields in Louisiana through Arkansas and Mississippi into Tennessee. Petitioner has conducted no intrastate business within Mississippi, nor is it qualified to do so. The Company paid Mississippi an income tax "upon that part of its net income fairly attributable to activities in Mississippi." It also pays *ad valorem* taxes to the six counties through which the Mississippi portion

---

[1] The second paragraph of the stipulation, in full, is as follows: "That all of the facts stated in said petition are true and no proof of the same shall be required in this cause. The Stipulation that the facts are true shall be limited to the facts stated in the petition and the defendants shall not, by virtue of this Stipulation, be considered or held to have agreed with any of the legal propositions and arguments made by the Memphis Natural Gas Company in said petition as the parties recognize that these legal questions and arguments are for determination by the Court."

of its interstate pipeline—some 135 miles—runs. The counties are: Washington, Bolivar, Sunflower, Coahoma, Tunica, and De Soto. It also pays *ad valorem* property taxes to the cities of Greenville (Washington), Indianola (Sunflower), and Clarksdale (Coahoma). In addition to these income and local *ad valorem* property taxes, not here questioned, the State Tax Commission assessed the franchise tax in controversy. This was done under an enactment of 1940, which imposed on all foreign corporations "doing business within this State" [2] a "franchise or excise tax equal to $1.50 of each $1,000.00 or fraction thereof of capital used, invested or employed within this state . . . ." Ch. 115 of the 1940 General Laws of Mississippi § 2; Miss. Code § 9314 (1942). The record is barren of any indication that "the taxing power exerted by the state bears fiscal relation to protection, opportunities and benefits given by the state," *Wisconsin* v. *J. C. Penney Co.,* 311 U. S. 435, 444, other than those for which the State, through its subordinate taxing authorities, has already made exaction, as contrasted with those which are given not by the State but by the United States and for which the State may not make exaction. *Crutcher* v. *Kentucky,* 141 U. S. 47. The record not only makes no such affirmative showing; it denies the foundation for suggesting that the State has given something for which it can exact a return. For it was stipulated between the Company and the State Tax Commission that

> "Your Petitioner obtains no protection from the State of Mississippi and acquires no powers or privileges in its interstate activity other than the protection

---

[2] The statute defined "doing business" to "mean and include each and every act, power or privilege exercised or enjoyed in this State, as an incident to, or by virtue of the powers and privileges acquired by the nature of such organization, whether the form of existence be corporate, associate, joint stock company or common law trust." Miss. Code § 9312 (1942).

afforded your Petitioner by virtue of the payment of an ad valorem tax on the property used by the Company wholly in interstate commerce." [3]

Even assuming therefore that, while Mississippi cannot impose a tax for the privilege of doing an exclusively interstate business within the State, it can cast an *ad valorem* property tax on the Mississippi portion of the corpus of its interstate property in a form having all the earmarks of a franchise tax, the assessment here challenged on the record before us cannot stand. And for a very simple reason.

There would hardly be disagreement, I take it, that Alabama could not constitutionally impose an *ad valorem* tax on these 135 miles of pipeline in Mississippi. This is so not because the pipeline does not traverse Alabama—concededly the assailed tax cannot be sustained merely because the pipeline travels through Mississippi—but because Alabama affords nothing to this petitioner for which it could ask recompense by way of a tax. We cannot know, unless we are instructed, how governmental powers are distributed in Mississippi as between its State and local governments. And the petitioner has no proof of its allegations that the nine county and city taxing authorities to which the petitioner pays approximately $85,000 a year in *ad valorem* taxes supply all the benefits which it enjoys from the State and that the State in seeking to enforce the franchise tax against the petitioner

---

[3] Particularly in the light of the substantial taxes paid by the petitioner for such protection to the nine county and city taxing authorities, where nothing else appears in the record except the exaction, this uncontroverted allegation must control over the presumptive inference that might otherwise be drawn in favor of the validity of the State's exaction. This Court, as the special guardian of the Commerce Clause, ought not to indulge in casuistic assumptions that the allegations left uncontroverted by the State do not correspond to the realities of the Mississippi situation.

is asking something (approximately $3,500 a year) for nothing. But "no proof of the same shall be required in this cause," according to the stipulation between the parties, to which the State Tax Commission has set its name. See *H. Hackfeld & Co.* v. *United States,* 197 U. S. 442, 446. In holding that Mississippi is "exacting compensation under this statute for the protection it affords the activities within its borders" to this petitioner the Court is flying in the face of the record. On the basis of that record Mississippi can no more exact this tax against this pipeline than could Alabama. For we are all agreed that where the only "local incident" is the fact of interstate commerce—that the interstate pipeline goes through Mississippi—the tax is necessarily a tax upon the privilege of doing interstate business. The Commerce Clause put an end to the power of the States to charge for that privilege.

But it is suggested that we are barred from reaching this conclusion, though the record compels it, because it deals with an issue not before us. Let us see. The petition for certiorari presented this question:

"Admittedly petitioner is engaged in Mississippi solely in interstate commerce. It pays to Mississippi *ad valorem* and income taxes and thus contributes materially to the cost of local government. An undomesticated foreign corporation has the right to engage in Mississippi in interstate commerce without paying for the privilege as the privilege flows from the Commerce Clause of the Federal Constitution and may not be directly burdened by the imposition of a local 'franchise or excise tax.' "

By this statement the petitioner clearly asserted that insofar as Mississippi has power to tax this interstate business for the protection accorded the "local incidents" of that business, the taxes levied by the State through its

local taxing authorities exhausted the power. To tax beyond that is a bald tax on the privilege of doing interstate commerce. If we were precluded from deciding a case otherwise than by the precise course of argument presented by counsel, many of our opinions would have to be deleted from the United States Reports.

The Court however attempts to deal with the contention. As I understand the Court's opinion, it argues that even if it be true that this tax does not recompense the State for the local protection accorded the petitioner's activities, this is wholly immaterial as the Supreme Court of Mississippi has given the tax a contrary interpretation. The opinion offers the extraordinary suggestion that although the State Tax Commission on behalf of the State conceded that the exaction as a matter of fact afforded no protection, the State Supreme Court may disregard such a concession of fact, having all the force of proof, and hold as a matter of law that protection beyond that for which taxes were already imposed was enjoyed by the interstate business.

In the first place the Supreme Court of Mississippi purported to do no such thing. On the contrary, its opinion concluded as follows:

> "Does the franchise tax here demanded amount to enough to have any substantial effect to block or impede the free flow of commerce, or is it at all out of reasonable proportion to the services and protection which must be furnished by the State in and about the stated local activities? The franchise tax demanded is approximately $3,400 per annum, whereas the ad valorem taxes are approximately $82,000 a year, whence the obvious answer to this last question must be in the negative." (201 Miss. 670, 676.)

Of course, a State tax on interstate commerce does not become a valid one merely because "it's only a little

one." And even in these days, an unconstitutional exaction by a State of $3,400 is not *de minimis*.

But even if the State court's opinion were susceptible of the construction accorded it by this Court, its *ipse dixit* in applying the Commerce Clause would not be binding on this Court. Of course the construction of a statute is for the State court. But the construction of the statute which this Court now attributes to the State Supreme Court, whereby the tax is imposed not for any "local incidents"—because these have already been fully taxed—makes clear beyond peradventure that it is a tax on the privilege of engaging in the doing of interstate business within the State, and such a tax is, of course, invalid under the Commerce Clause.

It is a novel abdication of this Court's function that we are bound by a State court's views of the constitutional significance of a State tax on interstate business, but are not bound by an unambiguous stipulation by the State that no protection was afforded by the State to the taxable local incidents of the interstate business beyond that for which the State, through its local agencies, has already levied the tax.

A State may of course increase the rate of a properly apportioned *ad valorem* tax of an interstate business. Compare *Wallace* v. *Hines*, 253 U. S. 66. But it can do so only by increasing the rate. The mere fact that the same number of dollars could have been exacted by the State in a constitutional way cannot legalize every tax, "as though the *ad valorem* rate had been increased." Because a State could obtain twice the amount of revenue that it gets from an interstate business by increasing the *ad valorem* rate does not constitutionally justify a tax which, by virtue of a stipulation having the force of truth, is not referable to any protection which the State accords.

These are not abstract objections against disregarding the tax which the State has in fact levied and treating it as though it levied some other tax. Practical considerations preclude such a patent endeavor to circumvent the restrictions that the Commerce Clause places upon the taxing powers of the States. A State legislature may be ready to levy a tax for the privilege of doing interstate business within the State—as legislatures have again and again attempted to do—and not be prepared to increase outright the *ad valorem* rate.

The suggestion that an otherwise unconstitutional tax may be treated "as though the *ad valorem* rate had been increased" is an easy way of sustaining almost every tax that would otherwise fall under the ban of the Commerce Clause by transmuting it into an assumed increase in the rate of an *ad valorem* tax. The suggestion has the merit of inventiveness. In the competition for revenue among the States, it is an inventiveness that subjects the hitherto great boon of free trade across State lines to the bane of multitudinous local tariffs.

The judgment should be reversed.