

# THE ATTORNEY GENERAL

## OF TEXAS

### AUSTIN 11, TEXAS

PRICE DANIEL
ATTORNEY GENERAL

January 4, 1952

Hon. Robert S. Calvert
Comptroller of Public Accounts
Austin, Texas

Opinion No. V-1383

Re: Applicability of gross re-
ceipts taxes to long dis-
tance toll receipts of
Mountain States Telephone
Company on calls between
Texas points via cables in
New Mexico.

Dear Mr. Calvert:

Your request for an opinion of this office
reads in part as follows:

"Article 7070 V.C.S. reads in part
as follows: (1) 'Each individual, com-
pany, corporation, or association owning,
operating, managing, or controlling any
telephone line or lines, or any telephones
within this State and charging for the use
of same, shall make quarterly, on the first
day of January, April, July and October of
each year, a report to the Comptroller, un-
der oath of the individual, or of the presi-
dent, treasurer, or superintendent of such
company, corporation, or association, show-
ing the gross amount received from all busi-
ness within this State during the preceding
quarter in the payment of charges for the
use of its line or lines, telephone and
telephones, and from the lease or use of any
wires or equipment within this State during
said quarter.'

"It has come to my attention that Moun-
tain States Telephone Company, with offices
at El Paso, Texas, routes a number of their
long distance calls from El Paso, Texas to
other points in Texas via their own cables
in New Mexico.

Hon. Robert S. Calvert, page 2  (V-1383)

"Please advise me whether or not
toll calls from one Texas point to an-
other Texas point routed via another
State as described above, is inter-
state commerce, and as such, exempt
from the Texas Gross Receipts Tax."

It becomes immediately apparent that the
answer to this question hinges upon the determina-
tion of whether the receipts are derived from inter-
state commerce. If so, then such receipts may be
wholly, or, at least, partially exempt from State
taxation under the Commerce Clause. U.S. Const. Art.
1, Sec. 8.

It has not been suggested that the inter-
state routing through New Mexico by the Mountain
States Telephone Company of the toll calls from El
Paso to other points in Texas was intentionally util-
ized as a means of avoiding this tax. We assume that
such routing was necessary or expedient and that the
company has acted in good faith. If the contrary
should appear, an entirely different question would
be presented.

We will not attempt to review or to distin-
guish the many cases relating to this interstate com-
merce question. It suffices to state that this is an
area of "nice distinctions." We enclose a copy of At-
torney General's Opinion No. V-994 (1950) wherein we
reviewed some of the recent interstate commerce cases.
It is a general rule that a State cannot levy a tax
so as to place a burden on, discriminate against, or
for the privilege of engaging in interstate commerce.
It is also generally stated that gross receipts de-
rived from interstate commerce are exempt from State
taxation. These rules, however, oversimplify the ques-
tion and are helpful in answering specific questions
in that they serve only as guide posts.

In the determination of whether a State tax
infringes the Commerce Clause, the Supreme Court in
McGoldrick v. Berwind-White Coal Co., 309 U.S. 33
(1940), laid down the following rules or tests:

"Section 8 of the Constitution declares that 'Congress shall have power . . . to regulate commerce with foreign Nations, and among the several States. . . .' In imposing taxes for state purposes a state is not exercising any power which the Constitution has conferred upon Congress. It is only when the tax operates to regulate commerce between the states or with foreign nations to an extent which infringes the authority conferred upon Congress, that the tax can be said to exceed constitutional limitations. See Gibbons v. Ogden, 9 Wheat 1, 187; South Carolina Highway Dept. v. Barnwell Bros., 303 U.S. 177, 185. Forms of state taxation whose tendency is to prohibit the commerce or place it at a disadvantage as compared or in competition with intrastate commerce, and any state tax which discriminates against the commerce, are familiar examples of the exercise of state taxing power in an unconstitutional manner, because of its obvious regulatory effect upon commerce between the states.

"But it was not the purpose of the commerce clause to relieve those engaged in interstate commerce of their just share of state tax burdens, merely because an incidental or consequential effect of the tax is an increase in the cost of doing the business, Western Live Stock v. Bureau, 303 U.S. 250, 254. Not all state taxation is to be condemned because, in some manner, it has an effect upon commerce between the states, and there are many forms of tax whose burdens, when distributed through the play of economic forces, affect interstate commerce, which nevertheless fall short of the regulation of the commerce which the Constitution leaves to Congress. . . . Nondiscriminatory taxation of the instrumentalaties of interstate commerce is not prohibited. . . . Nor is taxation of a local business or occupation which is

> separate and distinct from the trans-
> portation or intercourse which is in-
> terstate commerce, forbidden merely
> because in the ordinary course such
> transportation or intercourse is in-
> duced or occasioned by such business,
> or is prerequisite to it." (309 U.S.
> at 45)   (Emphasis added throughout.)

It is clear that, in view of the recent decisions, a State can tax receipts arising, in whole or in part, from interstate commerce if there are lo- cal activities of incidents[1] upon which to base the tax and the tax does not discriminate against such commerce.[2]

While the Commerce Clause does not expressly preclude State taxation of interstate commerce, the power of the States to tax interstate commerce was lim- ited because it was recognized as being "the dominant power over commerce."[3] Thus interstate commerce is im- mune only from such State taxation that has the effect of actually regulating such commerce. The Court has, however, treated regulations differently from taxation. In Memphis Natural Gas Co. v. Stone, 335 U.S. 80 (1948) the Court said:

> "... Regulations may be imposed
> by the state on commerce. Panhandle
> Eastern Pipe Line Co. v. Public Service
> Comm'n, supra; Bob-Lo Excursion Co. v.
> Michigan, 333 U.S. 28, 68 S.Ct. 358.

---

[1] Memphis Natural Gas Co. v. Stone, 335 U.S. 80 (1948).

[2] Central Greyhound Lines v. Mealey, 334 U.S. 653 (1948); Western Live Stock v. Bureau of Revenue, 303 U.S. 250 (1938); Stone v. Interstate Natural Gas Co. 103 F.2d 544 (C.C.A. 5th 1939, aff. 308 U.S. 522); Southern Natural Gas Co. v. Alabama, 301 U.S. 148 (1937).

[3] Freeman v. Hewit, 329 U.S. 249 (1946).

When state taxation of activities or
property within a state is involved,
different considerations control.  It
is no longer a question of actual in-
terruption of the operation of com-
merce.  Kelly v. Washington, 302 U.S.
1, 14, 58 S.Ct. 87, 82 L.Ed. 3.  Ra-
ther a prohibited tax enaction is one
beyond the power of the state because
the taxable event is outside its boun-
daries, . . . or for a privilege the
state cannot grant." (335 U.S. at 95)

While the Court formerly indulged in legal
fictions in certain circumstances by determining
that interstate commerce was local in nature in or-
der to uphold the State taxation or regulation, the
Court has indicated that it will recognize interstate
commerce as such and then determine whether the State
tax burdens the commerce in the constitutional sense.
The toll calls which are routed through New Mexico
must be treated as transactions constituting inter-
state commerce.  In Central Greyhound Lines v. Mealey,
334 U.S. 653 (1948), the Court said:

"It is too late in the day to deny
that transportation which leaves a State
and enters another State is 'Commerce
* * * among the several states' simply
because the points from and to are in
the same State."  (334 U.S. at 655)

The same general rules are applied in deter-
mining the validity of taxes levied upon interstate
communication as upon interstate transportation.  Fish-
er's Blend Station, Inc. v. State Tax Commission, 297
U.S. 650 (1936); Pacific Tele. and Tele. Co. v. Tax
Commission, 297 U.S. 403 (1936); Cooney v. Mountain
States Tel. and Tel. Co., 294 U.S. 384 (1935); Western
Union Tel. Co. v. Alabama, 132 U.S. 472 (1889); Ratter-
man v. Western Union Tel. Co., 127 U.S. 411 (1888);
Telegraph Co. v. Texas, 105 U.S. 460 (1882).  Thus, a
tax levied upon receipts derived from interstate commu-
nication will be sustained if such receipts are attri-
butable to intrastate business by a fair and reasonable
means or method of apportionment.  Central Greyhound
Lines v. Mealey, supra; Western Live Stock v. Bureau of
Revenue, 303 U.S. 250 (1938).

Article 7070, however, does not provide a method or means of apportioning the receipts from interstate commerce. Article 7070 was passed in its original form in 1907 and there is no indication that the statute has ever been construed so as to provide for the apportionment of the receipts from interstate commerce and there has been a long period of legislative acquiescence in this construction of the statute. In construing the phrase "business done in Texas," as it appears in Article 7084, V.C.S., the Court in Clark v. Atlantic Pipe Line Co., 134 S.W.2d 322 (Tex. Civ. App. 1939, error ref.) said (at p. 328):

> " . . . We hold that the language, 'business done in Texas,' as employed in this statute was intended to mean business begun and completed in Texas, and not business begun in Texas and completed in some other state or foreign nation, or vice versa. In other words, that it means intrastate business.

> " . . . Conceding, arguendo, that the language of the act is susceptible of the construction that it embraces inter as well as intrastate business, it manifestly is not so clearly so as not to render it open to construction. Departmental construction may therefore become a determining factor. Especially is this true regarding revenue measures, the administration of which is under constant observation of the legislature. See 39 Tex. Jur., pp. 234-238, §§ 125 and 126."

This office has previously held that receipts from interstate toll calls were not subject to this tax. Att'y Gen. Op. O-1878 (1940).

Although the gross receipts derived from the interstate business are not subject to this tax, that portion of the receipts representing wholly intrastate business which can be separated or segregated from the gross receipts is subject to the tax. 51 Am. Jur. 777, 779, 804, Taxation, Secs. 872, 874, 907, 908. Therefore, the receipts from "loop services" and from charges received under contracts or agreements for the use of

Hon. Robert S. Calvert, page 7  (V-1383)

lines, equipment or facilities in Texas are subject to the tax even though such services may be incidental to an interstate communication. Letter addressed to Hon. George H. Sheppard, Comptroller of Public Accounts, dated May 30, 1936, Letter Opinion Book 372, page 31.

In conclusion, it is our opinion that the gross receipts of the Mountain States Telephone Company arising from interstate communications are not subject to the tax levied by Article 7070, V.C.S., because such unapportioned taxation would place an undue burden upon interstate commerce in violation of Section 8 of Article I of the United States Constitution.

## SUMMARY

Receipts from toll charges involving interstate telephone communications are not subject to the occupation tax levied upon telephone companies by Article 7070, V.C.S., measured by the gross receipts from business done within the State. U.S. Const. Art. I, Sec. 8; Att'y Gen. Op. O-1878 (1940).

APPROVED:

W. V. Geppert
Taxation Division

Everett Hutchinson
Executive Assistant

Charles D. Mathews
First Assistant

FL:mwb:wb·

Yours very truly,

PRICE DANIEL
Attorney General

By Frank Lake

Frank Lake
    Assistant