COLEMAN, ATTORNEY GENERAL *v.* TRUNKLINE GAS COMPANY.

Mar. 2, 1953

No. 38755      22 Adv. S. 4      63 So. 2d 73

*J. H. Sumrall,* Jackson, and *J. P. Coleman,* Attorney General, Jackson, for appellant.

*Avery & Putnam, R. H. & J. H. Thompson,* Jackson, *Maxwell Bramlette,* Woodville, *M. M. Roberts,* Hattiesburg, *Lyell & Lyell,* Jackson, *Brunini, Everett, Grantham & Quinn,* Vicksburg, *Vinson, Elkins & Weems,* Houston, Texas, *W. O. Crain,* Shreveport, Louisiana, *Stone Wells,* Houston, Texas, *E. D. Adams,* Houston, Texas, *M. E. Newcomer,* Cleveland, Ohio, *Jones & Stratton,* Brookhaven, *Wm. A. Dougherty,* New York City, *Watkins & Eager,* Jackson, *James B. Henderson,* Houston, Texas, and *Pat F. Timmons,* Houston, Texas, for appellee.

288

ON SUGGESTION OF ERROR

HALL, J.

Appellee owns and operates a pipe line used for the transportation of natural gas from McAllen, Texas, through the States of Louisiana, Arkansas, Mississippi, Tennessee, Kentucky, and Illinois, terminating near Tuscola, Illinois. It is operating pursuant to the Federal Statute, 15 U. S. C. A. Section 717-717w, and holds a certificate of public convenience and necessity from the Federal Power Commission. After construction of its pipe line it began the transportation of gas on October 1, 1951. It does not buy, sell, produce or distribute gas in Mississippi, and all of its operations are wholly and exclusively in interstate commerce.

By Chapter 410, pages 679-680, Laws of Mississippi of 1952, the Legislature amended Section 34, Chapter 138, Laws of 1944, so as to levy a privilege tax of $75.00 per mile on each person operating a pipe line in or through this State measuring between twenty and twenty-six inches in diameter. Appellee owns 147.21 miles of such line. On August 1, 1952, the State Tax Commission made a tentative assessment against appellee in the amount

of $11,040.75 privilege tax on the operation of said line and gave notice to appellee that said assessment would be made final within thirty days thereafter. On August 25, 1952, appellee filed its protest and objections to said assessment and on September 2, 1952, the Tax Commission denied the protest and objections and made the assessment final, adjudging, however, that all facts stated in the objections were correct. Those facts were as above stated and in addition thereto that appellee's 1952 ad valorem taxes on said line amounted to $144,150.00, its franchise tax amounted to $4,711.50, and its state income tax, based on its net earnings in proportion to its flow of business through Mississippi, amounted to $21,477.00.

From the final order of the Tax Commission appellee appealed to the Circuit Court of Hinds County which held that the imposition of the privilege tax on purely interstate business is violative of the Commerce Clause of the Federal Constitution and therefore void. From the judgment of the Circuit Court the Attorney General, representing the State of Mississippi, appeals to this Court.

The sole question presented is whether the State may validly exact a privilege tax from a person or corporation engaged solely and exclusively in interstate business.

There can be no question that the tax here involved is strictly a privilege tax. The title to Chapter 410, Laws of 1952, is ''An Act to amend Section 34, Chapter 138, Laws of 1944, so as to increase the privilege tax on pipe line companies'' etc. Chapter 138, Laws of 1944, which was amended by the 1952 Act is entitled ''An Act to revise the privilege tax code of Mississippi . . . and to impose privilege taxes on certain businesses in the State of Mississippi.'' Section 27 of said Chapter 138 provides ''There is hereby imposed and levied and shall be collected annual privilege taxes, in addition to any and all other taxes imposed by law upon the persons, firms, co-partnerships, associations or corporations, for

the privilege of carrying on and continuing the businesses, activities, and exercising powers and rights under the laws of the State of Mississippi, which said tax shall be levied and collected as herein provided.'' Then follow several sections imposing privilege taxes on various public utilities. Section 34, which was amended by the 1952 Act, imposes a privilege tax on pipe line companies. Section 35 provides ''Each person required by the foregoing eight sections to pay a privilege tax for doing business in this state'' shall file with the Tax Commission an application, etc.

It is clear from the foregoing that the tax with which we are dealing is purely a privilege tax levied for the privilege of doing business in this State. The broad terms of the 1944 Act taxed all pipe lines regardless of whether they are engaged in interstate or intrastate business. It is significant to observe that under the 1944 Act the Tax Commission made no effort to collect a privilege tax from pipe line companies engaged exclusively in interstate business. The 1944 Act is almost an exact rescript of Section 163, Chapter 88, Laws of 1930, under which the State levied a privilege tax upon the interstate pipe line operations of Interstate Natural Gas Company, Inc. The enforcement of that levy was enjoined by the District Court of the United States from which action the Tax Commission appealed to the Supreme Court of the United States, and in a very short opinion that Court held that the tax is invalid as a burden upon interstate commerce. See State Tax Commission v. Interstate Natural Gas Company, Inc., 284 U. S. 41, 76 L. Ed. 156, 52 S. Ct. 62. In view of that decision it is readily understandable why the State Tax Commission made no effort to tax interstate pipe line companies under the 1944 Act.

In an apparent effort to circumvent the effect of the numerous decisions of the United States Supreme Court which have condemned such taxes, the 1952 Legislature

enacted the aforesaid Chapter 410 which again levied a privilege tax "upon each person operating a pipe line in or through this state or engaged in transporting in or through this state crude oil, liquid petroleum products, and natural or artificial gas through pipes or conduits" but the Act went further and stated that this tax is "for the privilege of exercising or enjoying such right and power in this state, and for the privilege of enjoying and receiving the benefit and protection of the government and laws of this state." The 1952 Act also defined the term "pipe line" as applying "to both interstate and intrastate trunk lines." Examining the 1930 law it appears that it applied to both interstate and intrastate lines without specifically mentioning both and the tax was levied for the privilege of exercising or enjoying the right and power of operating pipe lines in or through this State. The only thing added by the 1952 law was a statement that the tax is "for the privilege of enjoying and receiving the benefit and protection of the government and laws of this State."

It must be remembered that the protest avers and the order of the Tax Commission finds as a fact that appellee herein is paying to the State a franchise tax of $4,711.50. That tax is imposed by Section 9314, Code of 1942, in the amount of $1.50 on each $1,000.00 or fraction thereof of the value of the capital used, invested or employed within this State, which section specifically states "It being the purpose of this section to require the payment of a tax by all organizations not organized under the laws of this State, measured by the amount of capital or its equivalent, *for which such organization receives the benefit and protection of the government and laws of this State."* (Emphasis supplied.) It is significant to note that the franchise tax is levied solely for the privilege of receiving the benefit and protection of the government and laws of this State and that Chapter 410, Laws of 1952, is likewise for the privilege of

"enjoying and receiving the benefit and protection of the government and laws of this State." The only difference between the 1952 Act and the law imposing a franchise tax is that the 1952 Act adds the word "enjoying." By payment of the franchise tax the appellee has, in effect, purchased the right to receive the benefit and protection of the government and laws of this State. The tax sought to be imposed by the 1952 law is for identically the same privilege and does not confer upon appellee a single right or benefit which it has not already obtained by the payment of its franchise tax, its ad valorem tax and its income tax on its earnings in proportion to its investment in and its flow of business through Mississippi. Payment of the franchise tax conferred upon appellee the right to receive from the State the protection of its local activities in maintaining, keeping in repair, and in manning the facilities of its system through the State, the right to acquire rights of way by eminent domain or private purchase, protection by the State against acts of vandalism, and, in fact, every other right which it enjoys.

In McGoldrick v. Berwind-White Coal Mining Co., 309 U. S. 33, 84 L. Ed. 565, 60 S. Ct. 388, 128 A. L. R. 876, numerous types of state taxation are discussed, some of which are held not to violate the Commerce Clause of the Constitution and some of which are held to be in direct violation thereof. In the latter class are privilege taxes such as are sought to be imposed by our House Bill No. 34. In discussing these taxes the Court said: "Certain types of tax may, if permitted at all, so readily be made the instrument of impeding or destroying interstate commerce as plainly to call for their condemnation as forbidden regulations. Such are the taxes already noted which are aimed at or discriminate against the commerce *or impose a levy for the privilege of doing it . . .*" (Emphasis supplied.)

In the case of Spector Motor Service v. O'Connor, 340 U. S. 602, 95 L. Ed. 573, 71 S. Ct. 508, it was said: "This Court heretofore has struck down, under the Commerce Clause, state taxes upon the privilege of carrying on a business that was *exclusively* interstate in character. The constitutional infirmity of such a tax persists no matter how fairly it is apportioned to business done within the state. . . . In this field there is not only reason but long-established precedent for keeping the federal privilege of carrying on exclusively interstate commerce free from state taxation." The privilege tax involved in that case was levied by the State of Connecticut upon interstate truck lines using the highways of that state and Spector Motor Service maintained two terminals in Connecticut where less than truck load shipments were deposited and from which shipments coming into the state were delivered locally by pickup trucks, which same facilities were used in gathering freight for shipment to points outside the state. In the maintenance and operation of these purely local facilities the motor line necessarily kept a number of its employees within the state at all times and used the highways of the state in all of its operations and of course had the police protection of the state against acts of vandalism and the like. The Court specifically stated: "The tax does not discriminate between interstate and intrastate commerce. Neither the amount of the tax nor its computation need be considered by us in view of our disposition of the case. The objection to its validity does not rest on a claim that it places an unduly heavy burden on interstate commerce in return for protection given by the State. The tax is not levied as compensation for use of highways or collected in lieu of an ad valorem property tax." Notwithstanding all these affirmative declarations in the opinion of the Court, the Connecticut tax was struck down as being in violation of the Commerce Clause.

294

The Spector case was cited with approval in the more recent case of Memphis Steam Laundry Cleaner, Inc. v. Stone, 342 U. S. 389, 96 L. Ed. 436, 72 S. Ct. 424, wherein the Supreme Court of the United States struck down a privilege tax imposed by Mississippi on the business of soliciting and picking up laundry and dry cleaning in this State which was carried by truck outside the State to the City of Memphis, Tennessee, for processing and then returned and delivered to customers within this State. There the Memphis concern was using the highways of Mississippi, sending its employees and trucks into this State, obtaining and carrying on business in this State, and enjoying and receiving the benefit and protection of the government and laws of this State, but nevertheless the Court said: "The Commerce Clause created the nation-wide area of free trade essential to the country's economic welfare by removing state lines as impediments to intercourse between the states. The tax imposed in this case made the Mississippi state line into a local obstruction to the flow of interstate commerce that cannot stand under the Commerce Clause."

All of the above authorities are recent decisions of the Supreme Court of the United States. That Court has held unqualifiedly that a state privilege tax upon purely interstate operations is a direct violation of the Commerce Clause of the Federal Constitution and cannot stand. Following those decisions we hold that ▮▮ the tax here in question on purely interstate business falls outside the field of legitimate state taxation and that consequently the suggestion of error should be sustained and the opinion rendered herein on November 24, 1952 withdrawn.

We find nothing in the authorities relied upon by appellant which would lead to a different conclusion. Stone v. Interstate Natural Gas Co., 103 F. 2d 544, involved a franchise tax and not a privilege tax. Stone v. Memphis Natural Gas Company, 335 U. S. 80, 92 L. Ed.

1832, 68 S. Ct. 1475, likewise involved a franchise tax and not a privilege tax. Appellee does not question the right of Mississippi to impose a franchise tax upon it. It is paying its franchise tax, its income tax and its ad valorem tax. Interstate Oil Pipe Line Company v. Stone, 337 U. S. 662, 93 L. Ed. 1613, 69 S. Ct. 1264, cited by appellee, involved only the imposition of a privilege tax upon pipe lines engaged exclusively in intrastate business, that is to say, pipe lines running from oil fields within this State to loading racks adjacent to railroads within this State, and the tax was not in any manner sought to be imposed upon any interstate operations.

We do not attach any significance to the fact that the privilege tax code of this State also levies privilege taxes upon railroad companies, telephone and telegraph companies, power lines and express companies. All such companies are engaged in both interstate and intrastate business and their operations are so interwoven that it would be utterly impossible to separate the interstate from the intrastate activities of these companies.

Suggestion of error sustained, former opinion withdrawn, and cause affirmed.

*McGehee, C. J.*, and *Roberds, Holmes* and *Lotterhos, JJ.*, concur.

---

ETHRIDGE, J., dissenting:

The result of the controlling opinion, holding this tax invalid, is a severe blow at the taxing powers of the State. It is based, we think, upon a reading of the interstate commerce clause which is not warranted by the terms of that clause, by the provisions of the Mississippi statute, by recent pertinent decisions of the U. S. Supreme Court, or by decisions of this Court interpreting analogous legislation.

The majority opinion places limits upon the taxing power of the State which, if sustained by the U. S. Su-

preme Court, will further tend to centralize in Washington the collection of governmental revenues and to reduce revenue sources for the State. Appellee does not contend, nor can it properly, that the amount of this tax is exorbitant or unreasonable. Yet the effect of the controlling decision is that interstate pipe lines are placed in a category of immunity from privilege taxation, other than that which they now pay in the form of franchise and apportioned income tax. Under it the Legislature now has a very restricted power to make these interstate instrumentalities pay at a fair rate for services which the State renders to them. The original opinion in 9 Adv. S. 1, 61 So. 2d 276, now withdrawn, expressed our views, but further analysis of the statutes and cases is necessary in order to give our reasons for this dissent.

## I.

The statute in question, Miss. Laws 1952, H. B. No. 34, Chapter 410, pages 679-680, is part of the general statewide privilege tax law of 1944, Miss. Laws 1944, Chapter 138, being Code of 1942, Sections 9427-9696, 1950 Supplement. This act imposes privilege taxes "for the privilege of carrying on and continuing the businesses, activities, and exercising powers and rights under the laws of the State of Mississippi . . ." Mississippi Laws 1944, Chapter 138, Section 27. Included in the group subject to such tax are telephone companies, Section 28; electric light and power companies, Section 29; railroad companies, Section 30; telegraph companies, Section 31; sleeping car companies, Section 32; and express companies, Section 33. These privilege taxes are apportioned within the state for the number of miles of telephone, telegraph, and electric lines, railroad track, and for each mile of railroad track over which a sleeping car or express company runs its cars in this State.

The privilege tax upon persons operating interstate pipe lines for local benefits received is an integral part of the state-wide privilege tax law. It is apportioned

according to the mileage and size of pipe within the state and is levied upon the privilege of the taxpayer enjoying and receiving the benefit and protection of the government and laws of this State in operating such pipe line through the state. The statute in question, Mississippi Laws 1952, H. B. No. 34, Chapter 410, contains the usual separability clause in Section 2. It went into effect on April 12, 1952. It provides:

"Upon each person operating a pipe line in or through this state or engaged in transporting in or through this state crude oil, liquid petroleum products, and natural or artificial gas through pipes or conduits, for the privilege of exercising or enjoying such right and power in this state, and for the privilege of enjoying and receiving the benefit and protection of the government and laws of this state, there is levied a tax, in addition to all other taxes, as follows:

"On each mile of pipe having a diameter of less than twelve (12) inches....................................................$15.00

On each mile of pipe having a diameter of twelve (12) inches and less than fifteen (15) inches ...........................................................................$37.50

On each mile of pipe having a diameter of fifteen (15) inches and less than twenty (20) inches ...........................................................................$52.50

On each mile of pipe having a diameter of twenty (20) to twenty-six (26) inches, inclusive ...........................................................................$75.00

On each mile of pipe having a diameter of over twenty-six (26) inches.................................................$125.00

"The term 'pipe line' as used in this section shall apply to both interstate and intrastate trunk lines, but shall not apply to those pipe lines, known as service lines, used solely for distributing gas or other petroleum products in or near cities, towns, and villages to the ultimate consumer. And this section shall not apply to those persons, firms or corporations mining or producing gas or oil on

which a privilege tax measured by gross production is imposed and paid in this state.''

After the enactment of H. B. No. 34, the State Tax Commissioner made a tentative assessment against appellee, Trunkline Gas Company, and other companies with pipe lines traversing this State, on August 1, 1952. This tentative assessment reflected that appellee owned and operated within the state 147.21 miles of gas pipe line of 20 to 26 inches in diameter, that appellee was subject to the quoted privilege tax for 1952, and that it owed a tax in the amount of $11,040.75. The entire tentative assessment included also assessments of apportioned state-wide privilege taxes upon railroads, sleeping car and express companies, telegraph, telephone, and power companies. All of these taxpayers were allowed a period of thirty days from August 1 to make their objections to the tentative assessments. On August 4, appellee, by letter, was formally notified of its tentative assessment. On August 25 appellee filed with the State Tax Commissioner its protest and objections to the assessment. On September 2, 1952, the Tax Commissioner denied appellee's objections and protests, and, approving the assessment, made it final. This order of the Tax Commissioner recited that the Commissioner had heard the protests and ''the reasons therefor, and being of the opinion that notwithstanding the facts set out in said protests, which facts are found to be correct, the protests should be denied . . .'' Hence the averments of facts in the protest, as distinguished from appellee's legal conclusions, must be accepted as correct. They reflect the following situation:

Appellee, Trunkline Gas Company, is a Delaware Corporation, and a natural gas company as defined by the Federal Natural Gas Act of 1938, 15 U. S. C. A., Sections 717-717w. It has constructed and is now operating a natural gas pipe line in interstate commerce. In order to do this it obtained a certificate of public convenience and necessity from the Federal Power Commission.

This certificate authorized appellee to construct and operate a natural gas pipe line from McAllen, Texas, through Louisiana, Arkansas, Mississippi, Tennessee, Kentucky, and terminating near Tuscola, Illinois. Appellee constructed its pipe line through Mississippi and other states, and on October 1, 1951, it began the transportation of natural gas in interstate commerce through these states in this pipe line. All of the gas transported through Mississippi is solely and exclusively in interstate commerce. The appellee does not buy, sell, produce, or distribute gas or any other product in this State. It has not domesticated itself in Mississippi by having its charter approved and filed in this State, nor has it qualified to do an intrastate business in Mississippi. For the year 1952, appellee will pay to the State of Mississippi and its governmental subdivisions the following taxes: ad valorem taxes, $144,150.00; franchise tax, $4,711.50; and income taxes, $21,477.00. Appellee has within the State of Mississippi 153 miles of 24 to 26-inch natural gas pipe line. (A slight discrepancy here is that the assessment shows 147.21 miles, but no point is made of this.)

Appellee appealed from the final order of the State Tax Commissioner of September 2, 1952, making this assessment of privilege tax under H. B. No. 34 final against it. It did this by petitioning the Circuit Court of the First Judicial District of Hinds County for a writ of certiorari to bring up the records and orders of the State Tax Commissioner. Miss. Code 1942, Sections 1206-1208. The court's order and the writ were executed by the circuit judge on September 9. Appellee made a supersedeas bond. The circuit court held that appellee's pipe lines "are used solely and exclusively for the transportation of natural gas in interstate commerce and that the tax sought to be imposed on petitioner is unconstitutional, null and void . . ." Hence the assessment of the Tax Commissioner was reversed and set aside by a judgment of the circuit court of September 18. From that

judgment J. P. Coleman, Attorney General of Mississippi, representing the State of Mississippi, appealed. Similar appeals were taken from similar judgments of the circuit court involving substantially similar facts and assessments in causes No. 38,756 through 38,765. In this Court the parties agreed and stipulated that these appeals could be consolidated and considered together, and such judgment as might be entered in any of these cases might be applied to all of them.

On November 24, 1952, this Court handed down its decision reversing the order of the circuit court, which had held the tax invalid, and reinstating and affirming the order of the State Tax Commissioner. Subsequently a suggestion of error was filed by appellee rearguing exactly the same points and precedents briefed for and considered by the Court on the original decision. Nothing new was presented in the suggestion of error, but a change in personnel of the Court since the original decision resulted in the present controlling opinion sustaining the suggestion of error.

Appellee argues (1) that the statute, when it exempts "those persons, firms or corporations mining or producing gas or oil on which a privilege tax measured by gross production is imposed and paid in this state," makes an unreasonable and arbitrary classification, without any basis in fact in violation of the due process and equal protection clauses, and that it unlawfully discriminates against interstate commerce; (2) that H. B. No. 34 is a direct tax upon the privilege of doing interstate commerce and an interference with such commerce and, therefore, violates the interstate commerce clause of the Federal Constitution; and (3) that the taxpayer already pays Mississippi franchise, income, and ad valorem taxes, which are allegedly upon the same benefits and privilege taxed in House Bill No. 34, and that, therefore, the tax constitutes double taxation upon the same taxing incident and is violative of the due process and

equal protection clauses of the Federal and State Constitutions.

The majority opinion is based apparently upon Point (2) concluding that the tax is an invalid privilege tax on a corporation engaged exclusively in interstate commerce. It makes no reference to appellee's Point (1) which asserts the tax is discriminatory as to interstate commerce, so we will assume the controlling opinion rejects that argument. However, we will refer to that as well as the other points.

## II.

Appellee argues that H. B. No. 34 contains an unreasonable and arbitrary classification, in violation of the due process and equal protection clauses of the Federal Constitution, and an unlawful discrimination against interstate commerce, because of the following provision in Paragraph 3 of Section 1: "And this section shall not apply to those persons, firms or corporations mining or producing gas or oil on which a privilege tax measured by gross production is imposed and paid in this state." Appellee argues that this exemption places no limitation as to the amount of privilege or severance tax which would be paid by the exempted person or corporation; that if the owner of a pipe line is also engaged in the production of gas or oil in this State and pays a Mississippi privilege or severance tax, then that owner escapes liability for privilege tax on his pipe line under H. B. No. 34; that on the other hand those who have no gas production in Mississippi but who operate a pipe line here must pay the present tax; and that if there were two parallel lines, one owned by a corporation producing gas in Mississippi and paying the severance tax and the other owned by one not so producing gas and not paying the state's privilege or severance tax, the former would be exempted and the latter subject to the privilege tax under H. B. No. 34. Appellee says that this is not only an unreasonable classification, without basis in fact, but

that it unlawfully discriminates against interstate commerce.

We cannot agree. In the first place, this view is based upon assumed facts not reflected by any evidence in the record and not supported by the Mississippi statutes. In the absence of a clear showing to the contrary, and appellee makes none, we can not assume that the Legislature would make a classification which is discriminatory and wholly unreasonable. On the other hand, it is presumed that that body was engaged in the exercise of its legitimate constitutional discretion in classifying the various businesses affected by and exempted from this particular tax. And appellee makes no showing whatever to indicate a different conclusion. Absolute equality and uniformity are unattainable. Substantial compliance with these requirements is all that is required. 51 Am. Jur., Taxation, Section 152. This extends to classifications relating to exemptions. Ibid., Section 502.

In 51 Am. Jur., Taxation, Section 173, it is said: ''It is everywhere agreed that neither the Fourteenth Amendment to the Federal Constitution nor the equality and uniformity requirements of the state constitutions prohibit the making of classifications in state legislation relating to taxation. The power of a state to make reasonable and natural classifications for purposes of taxation, it has been said, is clear and not questioned. Such classifications may be made with respect to the subjects of taxation generally, the kinds of property to be taxed, the rates to be levied or the amounts to be raised, or the methods of assessment, valuation, and collection. Granting the power of a state to make classifications in tax matters, it has been said, we must then grant the right to select the differences upon which the classification shall be based.''

The record does not reflect that there is any person or corporation within the state which pays a privilege or severance tax upon the gross production of gas or oil, which also owns and operates a pipe line similar to

that of appellee, and which does not also pay a substantially equivalent tax upon the benefits received here from operating its pipe line. The burden of proof to establish these facts was upon appellee, which it failed to do. We can not strike down a solemn enactment of the Legislature by assuming a hypothetical situation.

Moreover, differences of terminology and measurement in the statutes themselves point toward equality rather than its opposite. Any person or corporation which produces gas or oil in Mississippi and which also owns and operates a pipe line in this State, although exempted from a levy under H. B. No. 34, must pay the privilege tax upheld and applied in Interstate Oil Pipeline Company v. Stone, infra, which is Code of 1942, Section 10109, 7th Paragraph, 1950 Supp., which is as follows: ''Upon every person engaging or continuing within this state in the business of operating a pipe line for transporting for compensation or hire from one point to another in this state oil or natural gas or artificial gas through pipes or conduits in this state, there is likewise hereby levied and shall be collected a tax, on account of the business engaged in, equal to two per cent of the gross income of the business.''

Such a taxpayer must also pay an oil privilege or severance tax, levied at the rate of six cents per barrel or six per cent of its value at the point of production, whichever is greater. Miss. Code 1942, Sections 9417-01 to 9417-15. If the taxpayer is engaged in the production of gas in this State, and also owns the pipe line, it must pay a privilege or severance tax measured by the gross production of gas produced at the rate of six per cent of its value at the point of production or three mills per 1,000 cubic feet, whichever rate is greater. Miss. Code 1942, Sections 9417.5-01 through 9417.5-14, 1950 Supplement.

So the taxpayer who is exempted from H. B. No. 34 because he pays the Mississippi severance tax must pay (1) privilege or severance taxes measured by six per

cent of gross production of oil or gas; (2) ad valorem taxes, (3) franchise tax, (4) state income tax, and (5) the quoted privilege tax levied by Code Section 10109. The basis of measuring the privilege or severance taxes on gross production, and the privilege tax of Section 10109, is entirely different from that of H. B. No. 34. The former are based upon percentages of production or income, and the latter upon mileage and size of pipe in the state. We should assume that the Legislature had sound reasons for concluding that the methods of measurement therein, and the amounts of such taxes, together with the other stated taxes which a taxpayer exempted from H. B. No. 34 must pay, would result in substantial equality of treatment in all instances. Appellee makes no showing whatever that they do not, and with the foregoing facts in mind, we could not presume that the result would be inequality, and discrimination against interstate commerce. If such a situation actually arises in the future, and the record reflects it, we would then be warranted in dealing with it accordingly. But this record and the Mississippi statutes, we think, indicate no discrimination against interstate commerce, and on those factors alone we must rely. The majority opinion herein appears also to reach this result, since it does not notice this point of appellee.

### III.

The majority opinion says that "The sole question presented is whether the State may validly exact a privilege tax from a person or corporation engaged solely and exclusively in interstate business." With deference, we do not think that is the issue here. The courts, including this one, have often upheld state privilege taxes upon foreign corporations engaged exclusively in interstate commerce, where the tax is upon local benefits and protections received from the taxing state, and is apportioned, non-discriminatory and not subject to repeated exactions in other states. The following discus-

sion demonstrates this. And H. B. No. 34 complies fully, we think, with these constitutional requirements.

The question is whether the legislatively stated basis and operating incidence of the tax is permissible under the interpretations of the interstate commerce clause in the decisions of the United States Supreme Court. Initially, there is a basic proposition that every statute is presumed to be constitutional until it is shown beyond every reasonable doubt to be void; that the Court will not presume that the Legislature intended to do a vain or unconstitutional act; and that the invalidity of a statute must be shown clearly, convincingly, and beyond a reasonable doubt. Russell Investment Company v. Russell, 182 Miss. 385, 418, 178 So. 815, 182 So. 102 (1938).

We first look to the "operating incidence" of the tax. Memphis Steam Laundry Cleaner, Inc. v. Stone, 72 S. Ct. 424 (1952). H. B. No. 34 provides that it is a tax upon persons operating pipe lines in or through this State or engaged in transporting in or through this State crude oil, liquid petroleum products and natural or artificial gas through pipes or conduits. The person operating or engaged in transporting through this State such products in the pipe line is the one who is liable for the tax. The statute then states its basis, "for the privilege of exercising or enjoying such right and power in this state, and for the privilege of enjoying and receiving the benefit and protection of the government, and the laws of this state." The tax is upon the privileges so received by the taxpayer, as defined in the quoted part of the statute, that is, for the privilege of exercising local rights and powers and receiving locally the benefit and protection of the government and laws of this State. It is an exaction and recompense to the state for the protection of the local activities in maintaining, keeping in repair, and otherwise in manning the facilities of the system throughout its miles of line in this State. These are benefits and protections afforded by the State of

Mississippi, and only by this State, and are subject to reasonable, non-discriminatory taxation which can not be subject to repeated exactions in other states.

The tax is not discriminatory. It is not subject to repeated exactions in other states, because it is based upon a certain amount on each mile of pipe line having graduated diameters within the state. Texas, Louisiana, Arkansas, Tennessee, Kentucky, and Illinois, through which appellee also has its pipe line, can not tax the miles of pipe line in Mississippi or the benefits and protections afforded appellee in using, maintaining, and keeping in repair such miles of pipe line, by the government and laws of this State. With these factors in existence, we think that the tax complies literally and adequately with the requirements of such taxation articulated in the decisions of the United States Supreme Court.

As mentioned previously, H. B. No. 34 is a part of the state-wide privilege tax laws of Mississippi. Other instrumentalities in interstate commerce have for many years been subject to admittedly valid ad valorem, franchise, income and privilege taxation upon an apportioned and non-discriminatory basis. Illustrations are telephone and telegraph companies, railroad companies, sleeping car and express companies. These taxes are upon the local benefits and protections received in Mississippi by these instrumentalities in interstate commerce, and are properly apportioned. Barrett, State Taxation of Interstate Commerce, 4 Vanderbilt L. Rev. 496, 498-506 (1951). The majority decision holds that appellee and other pipe line companies are not subject to similar privilege taxes. The result is that interstate pipe line companies are the only instrumentalities in interstate commerce receiving local benefits and protections which are not subject to such a tax. Railroad and other enumerated companies must pay a mileage, apportioned tax. But appellee and other pipe line companies, simply because they transport gas and petroleum in pipe lines, are now placed in a

different and privileged category and are not subject to apportioned, non-discriminatory privilege taxes.

We can not concur in this position. The essence of due process and equal protection is equality of responsibility of each citizen and corporation receiving the benefits and protections of the laws of the state in paying for those privileges through a fair system of taxation. Immunizing appellee and other pipe lines from such privilege taxation in fact results in inequality. Nor is there any factual reason why an interstate pipe line should not bear its share of privilege taxes, duly apportioned, along with other interstate carriers and utilities who receive the benefits and protections accorded to them by the state laws and government, and who exercise local activities such as those enumerated.

This tax is an integral part of a legitimate effort by the Legislature to require all public utilities receiving these local privileges, benefits and protections to meet their fair share of the revenue system of the state and states in which they receive these benefits. Limitations of the record upon certiorari do not preclude us from taking cognizance of facts known to all. Appellee, in order to construct its pipe line, had to condemn through eminent domain or purchase by contract land within the state upon or under which its pipe line runs. It had to use this land and the highways and transportation facilities of the state, constructed by the state at state expense, to move its pipe and equipment to the land upon or under which the pipe is located. If any repairs are necessary upon this pipe line, or any supervision of it is required, appellee must use these same state facilities for that purpose. Appellee expects and will receive the protection of the law enforcement officers and courts of this State in maintaining its pipe line against vandals and persons who might undertake to impede its operations or damage its facilities. The Legislature was aware of these facts when it enacted this tax.

In Stone v. Interstate Natural Gas Company, 103 F. 2d 544 (C. C. A. 5th 1939), the Fifth Circuit Court of Appeals upheld the validity of a Mississippi franchise tax levied upon capital used, invested, or employed in Mississippi, for the benefits and protections accorded in Mississippi and apportioned to that used within the state. The taxpayer was an interstate gas pipe line company which in traversing Mississippi sold gas wholesale to three distributors in this State. It had qualified to do business in Mississippi. The Court observed that "immunity from taxation ought to be jealously regarded", and that the tax was a valid levy upon local activities, benefits and protections received by the company. It said: "And interstate carriers and merchants must pay general property taxes for State protection to their property in the State. Now when such property taxes prove insufficient to support the State government which protects their business as well as their property, why should not general taxes in other forms be shared by them, where not expressly prohibited by the Constitution? The State of Mississippi has not taxed this Gas Company on its transportation of gas into or through Mississippi. Whether it transports or not, or transports much or little, does not affect the tax. The tax therefore does not directly affect the transportation. Like a poll tax on men, it is demanded of all business corporations having capital in Mississippi just for being there with their capital. We hold the tax valid . . ." This decision was affirmed per curiam in 308 U. S. 522, 60 S. Ct. 292 (1940).

A recent case supporting these views, and which we think should be controlling here, is Stone v. Memphis Natural Gas Company, 201 Miss. 670, 29 So. 2d 268 (1947). The Memphis Natural Gas Company owned and operated a natural gas pipe line running from Louisiana and for 135 miles through Mississippi and into Memphis, Tennessee. The system included two compressing sta-

tions in this state. It was stipulated that the company, so far as Mississippi was concerned, operated solely and exclusively interstate. It had one customer in Mississippi to which it delivered gas wholesale, under a contract made in another state. The company had not qualified to do business in Mississippi and had no employees other than those necessary to maintain the pipe line and its related facilities. The State Tax Commissioner assessed the company for the Mississippi franchise or excise tax under Code of 1942, Section 9314, which provides: "... a franchise or excise tax equal to $1.50 of each $1,000.00 or fraction thereof of the value of capital used, invested or employed within this state, except as hereinafter provided. It being the purpose of this section to require the payment of a tax by all organizations not organized under the laws of this state, measured by the amount of capital or its equivalent, for which such organization receives the benefit and protection of the government and laws of the state."

Section 9312 defined the term "doing business" as including "each and every act, power or privilege exercised or enjoyed in this State, as an incident to, or by virtue of, the powers and privileges acquired by the nature of such organization, whether the form of existence be corporate, associate, joint stock company or common law trust." This Court held: "It is to be seen that there is no attempt to tax interstate commerce as such, but the levy is an exaction which the State requires as a recompense for its protection of lawful activities carried on in this State by the corporation, foreign or domestic, activities which are incidental to the powers and privileges possessed by it by the nature of its organization—here the local activities in maintaining, keeping in repair, and otherwise in manning the facilities of the system throughout the 135 miles of its line in this State." It was said that the incidental local activities carried on by the company in this State were substantial in nature

and extent, and that the franchise tax had no substantial effect of impeding the free flow of commerce and was reasonable in its amount. We think that the present decision is contrary to that holding.

This decision was affirmed in Memphis Natural Gas Company v. Stone, 335 U. S. 80, 68 S. Ct. 1475, 92 L. Ed. 1832 (1948). The controlling opinion stated: "Mississippi, through its Supreme Court, has declared that there is no attempt to tax the privilege of doing an interstate business or to secure anything from the corporation by this statute except compensation for the protection of the enumerated local activities of 'maintaining, keeping in repair and otherwise in manning the facilities.' 201 Miss. 670, 29 So. 2d 268. Under Section 9314, quoted in Note 1, in the light of that statute's definition of 'doing business' set out on Page 2, supra, this is a reasonable meaning to give the taxing statute. We must accept the state court's interpretation. We therefore conclude that the Mississippi statute here involved is not upon the privilege of doing an interstate business. . . . The Mississippi excise has no more effect upon the commerce than any of the instances just recited. The events giving rise to this tax were no more essential to the interstate commerce than those just mentioned or ad valorem taxes. We think that the state is within its constitutional rights in exacting compensation under this statute for the protection it affords the activities within its borders. Of course, the interstate commerce could not be conducted without these local activities. But that fact is not conclusive. These are events apart from the flow of commerce. This is a tax on activities for which the state, not the United States, gives protection and the state is entitled to compensation when its tax cannot be said to be an unreasonable burden or a toll on the interstate business."

In a concurring opinion, Judge Rutledge pointed out that the tax was non-discriminatory, as is the present

privilege tax, and observed that the Court had at the same term sustained a New York apportioned privilege tax upon gross receipts from interstate transportation of a bus company operating in interstate commerce. Central Greyhound Lines, Inc. of New York v. Mealey, 334 U. S. 653, 68 S. Ct. 1260 (1948). He noted that the local activities for the protection of which the Mississippi tax purported to be laid "are incidents of carrying on that business taking place in Mississippi and only there, for which Mississippi affords protection received from no other state or the United States. Nor can any other state give that protection. For that portion of the business and the protection given it, I think the state is entitled to levy such a tax as has been placed here. Nothing in the commerce clause or its great purposes forbids such an exaction. Nor is the state limited to a single exaction for different or indeed like protections afforded, so long as each is safeguarded against prohibited effects upon commerce, as are those laid by Mississippi, and their aggregate cannot be shown to contravene the clause's purpose."

The nature of the tax sustained in *Memphis Natural* and the present privilege tax are similar as being indirect, excise or privilege taxes upon local benefits and protections conferred by Mississippi. Both taxes are apportioned, non-discriminatory, and not subject to duplication in other states. The franchise tax sustained in the *Memphis Natural* case was upon the exercise of the stated local benefits measured by the apportioned capital used, invested, or employed in this State. The privilege tax of H. B. No. 34 is upon the privilege of the corporation receiving and using local activities, benefits and protections granted by Mississippi and measured by the apportioned mileage and size of pipe line within the state. Memphis Natural Gas Company v. Stone supports the validity of the tax assessed in the instant case.

In Interstate Oil Pipeline Company v. Stone, 337 U. S. 662, 69 S. Ct. 1264 (1949), the Court affirmed a judgment of this Court in Interstate Oil Pipeline Company v. Stone, 203 Miss. 715, 35 So. 2d 73, 36 So. 2d 142 (1948). The taxpayer was assessed with a privilege tax measured by the gross receipts "upon every person engaging or continuing within this state in the business of operating a pipeline for transporting for compensation or hire from one point to another in this state, oil or natural gas or artificial gas through pipes or conduits in this state . . ." Miss. Code 1942, Section 10109, 1950 Supplement, page 443. Interstate Oil Pipeline Company was a foreign corporation which had qualified to do business in Mississippi. It owned and operated pipe lines which were used to transport oil from leased tanks in various oil fields in this State to loading racks adjacent to railroads elsewhere in the state. From these racks, the oil was pumped into railroad tank cars for shipment outside the state. This Court held that the operation of these pipe lines between points within the state was intrastate rather than interstate commerce, and that the tax was a tax on the privilege of doing an intrastate business. The United States Supreme Court affirmed the assessment and said:

"We do not pause to consider whether the business of operating the intrastate pipe lines is interstate commerce for, even if we assume that it is, Mississippi has power to impose the tax involved in this case. Further, we do not find it necessary to dispute that the Supreme Court of Mississippi construed the statute as imposing a tax on the privilege of operating a pipe line wholly within the state, and not a tax solely upon the 'local activities of maintaining, keeping in repair, and otherwise in manning the facilities', situated in Mississippi, Memphis Natural Gas Company v. Stone, 335 U. S. 80, 92-93, 68 S. Ct. 1475, 1481, 92 L. Ed. 1832, or upon the gross receipts themselves, Central Greyhound Lines v.

Mealey, 334 U. S. 653, 68 S. Ct. 1260, 92 L. Ed. 1633. While we are of course bound by the construction given a state statute by the highest court of the State, we are concerned with the practical operation of challenged state tax statutes, not with their descriptive labels . . . Since all the activities upon which the tax is imposed are carried on in Mississippi, there is no due process objection to the tax. The tax does not discriminate against interstate commerce in favor of competing intrastate commerce of like character. The nature of the subject of taxation makes apportionment unnecessary; there is no attempt to tax interstate activity carried on outside Mississippi's borders. No other state can repeat the tax. For these reasons the commerce clause does not invalidate this tax.''

The privilege tax construed in the *Interstate* case did not contain terms such as are in the state franchise tax, and in H. B. No. 34, spelling out the operating incidence of the tax. The Court was primarily concerned with whether the tax was non-discriminatory, reasonable in amount, and not subject to repeated exactions outside Mississippi. These criteria were complied with and the tax as assessed was upheld. See also Bode v. Barrett, and Co-Ordinated Transport, Inc. v. Barrett, Nos. 187 and 274, U. S. S. Ct., February 9, 1953; City of Chicago v. The Willette Company, No. 23, U. S. S. Ct., February 9, 1953.

In view of the foregoing recent decisions of this Court and the United States Supreme Court, we do not think that in passing H. B. No. 34 the Legislature was making, as the majority opinion states, ''an apparent effort to circumvent the effect of the numerous decisions of the United States Supreme Court which have condemned such taxes . . .'' On the contrary, all of the foregoing decisions are comparatively recent and all of them deal with privilege taxes upon interstate pipe lines. The present statute reflects a sincere effort by the Legisla-

ture to comply with the constitutional requirements set forth in these decisions, and we think that it is an adequate compliance. The United States Supreme Court has not overruled these cases, Stone v. Interstate Natural Gas Company, Memphis Natural Gas Company v. Stone, and Interstate Oil Pipeline Company v. Stone. The latter two were decided in 1948 and 1949, respectfully, and are the latest expressions by that Court of analogous state taxation of interstate pipe lines. The opinion of this Court in the *Memphis Natural* case is the latest expression by this Court with reference to privilege taxation of interstate pipe lines. The present decision sustaining the suggestion of error is in our opinion an overruling of the decision of this Court in the *Memphis Natural* case, and is not in compliance with the decisions of the United States Supreme Court on the appeals in the *Interstate Natural, Memphis Natural* and *Interstate Oil* cases.

The only response which the majority opinion makes to those cases is a statement that they do not lead to a conclusion different from that reached by the majority, because the *Interstate Natural* and *Memphis Natural* cases involved franchise taxes and not a privilege tax. However, the Mississippi franchise tax which was there involved is a privilege tax upon the privilege of having capital used, invested or employed in Mississippi. H. B. No. 34 is a privilege tax also, upon different incidents, the local benefits and protections received from the State. It is said that there are three principal forms of taxation, ad valorem property taxes, excise taxes and income taxes. 51 Am. Jur., Taxation, Section 23. The term "excise tax" is synonymous with privilege tax, ibid. Section 33, and is imposed upon the exercise of a privilege or the receipt of benefits by the taxpayer. Ibid. Section 35. And it is well established that a franchise tax such as that approved in the *Interstate Natural* and *Memphis Natural* cases is a privilege tax. 51 Am. Jur., Taxation, Sections 809, 811. Hence both the privi-

lege tax of H. B. No. 34 and the Mississippi franchise tax upheld in those cases are excise taxes, and both of them are privilege taxes, the difference being that they are levied upon the exercise and receipt of different benefits and privileges. Since these taxes are of the same type, we do not think that the authority of the *Interstate Natural* and *Memphis Natural* cases can be removed by saying that they dealt with franchise and not privilege taxes.

The controlling opinion cites and quotes from Mc-Goldrick v. Berwind-White Coal Mining Company, 309 U. S. 33 (1940), with particular reference to an obiter discussion of privilege taxes. That case upheld the validity of a New York City retail sales tax, upon sales made in New York City of coal shipped to the city from Pennsylvania. That case has no application to the instant question.

The controlling opinion holds that H. B. No. 34 "was levied for the privilege of exercising or enjoying the right and power of operating pipelines in or through this State." But that is not what the Legislature, which is vested with the taxing power of the State, said. It placed the tax upon the "privilege of enjoying and receiving the benefit and protection of the government and laws of this State."

The majority opinion cites as a controlling, recent case Spector Motor Service, Inc., v. O'Connor, 340 U. S. 602, 71 S. Ct. 508 (1951), but we do not so construe that decision. Connecticut levied a tax or excise upon an interstate trucking company "for the privilege of carrying on or doing business within the state . . ." Taxpayer was a Missouri corporation engaged exclusively in interstate trucking. However, it had qualified to do business in Connecticut, leased and utilized terminal facilities there, owned pickup and heavy trucks, and had twenty-seven full-time workers in that state. The Connecticut Court construed the tax to be an excise upon the franchise of corporations for the privilege of carrying

on and doing business in the state. It did not discriminate between interstate and intrastate commerce. The Court held that the "operating incidence" of the tax as interpreted by the state court was upon the privilege of doing an interstate business, and that this method adopted by Connecticut of levying the tax, even though fairly apportioned to business done within the state, was invalid. The Court then made several significant statements in the controlling opinion to indicate that the tax could properly have been levied upon the local activities, benefits and protections received in Connecticut by this interstate trucking company. To support these statements, it cited among other cases the *Memphis Natural* and *Interstate* cases. The controlling opinion said:

"The objection to its validity does not rest on a claim that it places an unduly heavy burden on interstate commerce in return for protection given by the State. The tax is not levied as compensation for the use of highways or collected in lieu of an ad valorem property tax. Those bases of taxation have been disclaimed by the highest court of the taxing State. It is not a fee for an inspection or a tax on sales or use. It is a 'tax or excise' placed unequivocally upon the corporation's franchise for the privilege of carrying on exclusively interstate transportation in the State. It serves no purpose for the State Tax Commissioner to suggest that, if there were some intrastate commerce involved or if an appropriate tax were imposed as compensation for petitioner's use of the highways, the same sum of money as is at issue here might be collected lawfully from petitioner. Even though the financial burden on interstate commerce might be the same, the question whether a state may validly make interstate commerce pay its way depends first of all upon the constitutional channel through which it attempts to do so . . . The answer in the instant case has been made clear by the courts of Connecticut. It is not a matter of labels. The incidence of the tax provides the answer. The courts of Connecticut have

held that the tax before us attaches solely to the franchise of petitioner to do interstate business. The State is not precluded from imposing taxes upon other activities or aspects of this business which, unlike the privilege of doing interstate business, are subject to the sovereign power of the State. Those taxes may be imposed although their payment may come out of the funds derived from petitioner's interstate business, provided the taxes are so imposed that their burden will be reasonably related to the powers of the State and non-discriminatory."

Nor do we think that Memphis Steam Laundry Cleaner, Inc. v. Stone, 72 S. Ct. 424 (1952) reversing ibid., 53 So. 2d 89 (Miss. 1951), affects this case. A Mississippi privilege tax was imposed upon persons "soliciting business for a laundry not licensed in this state." Appellant owned a laundry in Memphis, Tennessee, and solicited business, picked up and delivered laundry and cleaning in ten north Mississippi counties. It was held that the tax was invalid because it was laid upon the privilege of soliciting interstate business, citing the long line of "drummer" cases. It was further said that if the operating incidence of the tax was upon the pick-up and delivery of laundry and cleaning on regular routes within Mississippi, the tax was invalid because it discriminated against interstate commerce, since Mississippi laundries competing with appellant had to pay a tax considerably smaller in amount. By implication, if the tax had been construed solely as a tax upon the privilege of appellant exercising the local activities of picking up and delivering laundry, and had not been discriminatory, it would have been valid. The tax assessed under H. B. No. 34 is non-discriminatory, and is expressly placed upon the privilege of appellee exercising and using local benefits and protections granted by Mississippi in constructing, operating, repairing and maintaining its pipe line through the State. It in fact complies with the criteria of the *Memphis Steam Laundry* case.

It has been held that State Tax Commission of Mississippi v. Interstate Natural Gas Company, 284 U. S. 41, 52 S. Ct. 62, 76 L. Ed. 156 (1931), is a pertinent authority to strike down this statute. The tax there involved was a Mississippi privilege tax under Miss. Laws 1930, Chapter 88, Section 163, page 188, ''upon each person engaging and/or continuing in this state in the business of operating a pipe line or transporting in or through this state, oil, or natural, or artificial gas, through pipes, and/or conduits, a tax as follows . . .'' The tax wås measured by each mile of pipe line within the state and included only trunk lines. The taxpayer, a foreign corporation, operated an interstate trunk line from gas fields in Louisiana for 72.42 miles through Mississippi and back to Louisiana. Distributing companies tapped its pipe near Natchez and Woodville, and the gas withdrawn was measured by a meter at those points. The gas pressure was reduced before it passed into the wholesale purchaser's hands. A decree of a three-judge Federal Court permanently enjoining the enforcement of the assessment against Interstate Natural Gas Company was affirmed in a short opinion. It was there said: ''The work done by the plaintiff is done upon the flowing gas to help the delivery and seems to us plainly to be incident to the interstate commerce between Louisiana and Mississippi.''

We do not think that this case should be applicable here for several reasons. The 1930 act, somewhat like the Connecticut statute in the *Spector Motor Service* case, was drafted as a tax upon the privilege of doing an interstate pipe line business. It was not a tax, as is H. B. No. 34, upon local activities, benefits and protections conferred only by Mississippi. The operating incidence of the 1930 tax was entirely different from that of the 1952 tax. The former contained none of the terminology which is in the 1952 statute spelling out the basis of the levy. This distinction between the 1930 statute as con-

strued in the *Interstate Natural* case and the Mississippi franchise tax, upheld in *Memphis Natural Gas Company* v. *Stone,* was made specifically by the Court in the latter case, 335 U. S. 80, 90-93, 68 S. Ct. 1475, 1480-1481. It was there pointed out that the operating incidence of the franchise tax then upheld was "different from the Mississippi statute in the Interstate case in 284 U. S." The same distinction exists between the 1930 and 1952 taxes. Moreover, the powers of states to tax local benefits received by interstate instrumentalities had not been developed and interpreted in 1931 (the time of the *Interstate* case) to the extent that it has been developed in recent years. Brown, State Taxation of Interstate Commerce—What Now? 48 Mich. L. Rev. 899 (1950); Barrett, State Taxation of Interstate Commerce, 4 Vanderbilt L. Rev. 496 (1951).

In Western Live Stock v. Bureau of Revenue, 303 U. S. 250, 254, 58 S. Ct. 546, 82 L. Ed. 823 (1938), the Court said: "It was not the purpose of the commerce clause to relieve those engaged in interstate commerce from their just share of state tax burden even though it increases the cost of doing the business. 'Even interstate commerce must pay its way,' . . . and the bare fact that one is carrying on interstate commerce does not relieve him from many forms of state taxation which add to the cost of his business."

Present decisions place major emphasis upon the existence of proper local incidents for the tax. With deference, we think that the majority opinion ignores this established test. But a more realistic test is whether the tax imposes an actual economic burden upon commerce which is so substantial as to be disproportionate to the pipe line's legitimate obligations to the state. The formal incidence of the tax should be of less importance than the extent of the burden it places upon interstate commerce. Interstate commerce has grown so extensive in the past two decades that all states are called upon

to give services to it—services which should be paid for at a fair rate. The controlling opinion makes that objective difficult if not impossible.

The test of a state tax's validity should be a practical one dealing with economic facts. The fundamental problem is whether the tax, as a matter not of legal theory but of economic fact, imposes a substantial burden amounting to at least a potential barrier on interstate commerce. This commerce must pay its way in state taxes as in other costs. And so long as the state tax has only this effect it should be valid. But the majority opinion does not consider these economic facts. The instant tax is nondiscriminatory, apportioned to mileage within the state, reasonable in amount, and not subject to repeated exactions in other states. Hence considered from the essentially economic aspects of this constitutional issue, as well as from an application of the formalistic "local incidents of commerce" rule, we think that the tax here assessed complies with the constitutional and factual requirements of the interstate commerce clause.

## IV.

Appellee argues that it already pays Mississippi franchise, income, and ad valorem taxes; that these taxes (especially the franchise tax) are upon the same local benefits, privileges and protections taxed in H. B. No. 34; that therefore the tax constitutes double taxation upon the same taxing incident or basis, and is violative of the due process and equal protection clauses of the State and Federal Constitutions.

The majority opinion does not expressly apply that line of reasoning, but uses it as a circumstance in reaching its result. It says: "By payment of the franchise tax the appellee has, in effect, purchased the right to receive the benefit and protection of the government and laws of this State. The tax sought to be imposed by the 1952 law is for identically the same privilege

and does not confer upon appellee a single right or benefit which it has not already obtained by the payment of its franchise tax, its ad valorem tax and its income tax on its earnings in proportion to its investment in and its flow of business through Mississippi.''

With deference, we can find no precedent whatever to support that position, nor does the controlling opinion cite any. To say that appellee has already purchased the right to receive the benefit and protection of the state laws, and therefore cannot be taxed again for such right, is to say in effect that the tax structure of the state so far as appellee is concerned is now fixed finally for appellee as to its present operations, unless the amount of the franchise tax is increased. All of the cases which have considered this rather startling proposition have rejected it prior to this time.

The taxing power of the State of Mississippi is vested by the State Constitution in the Mississippi Legislature. The responsibility for determining the revenue and appropriations for the state, and the manner of accomplishing this is vested in that body. Hence this issue involves primarily a question of legislative judgment and not of constitutional restriction. The amount of taxes upon all citizens, individual and corporate, is at time burdensome, but as Judge O. W. Holmes once said, that is the price which we pay for civilization. This appeal is by writ of certiorari and the record is confined to the documents and papers before the Tax Commission. Appellee makes no showing, even if such were permissible, that the tax assessed against taxpayer is in excess of that paid by similar enterprises operating within the state, and appellee makes no showing whatever that the tax is so unusual, heavy and burdensome as to hinder or impede interstate commerce. There is no evidence in the record whatever to that effect.

In Memphis Natural Gas Company v. Stone, supra, 335 U. S., at page 85, the Court said: ''Nor can this

result be changed by the suggestion that the tax cannot be on any local incidents 'because they have already been fully taxed.' The local incidents, spoken of by the Supreme Court of Mississippi, were not the taxable events selected for the imposition of the ad valorem tax. These local incidents were the basis for the franchise or excise tax now in controversy. *No reason is perceived why Mississippi cannot exact this different tax for the same protection.* It is as though the ad valorem rate had been increased. The power to levy such a new tax is not and could not be questioned except as an interference with commerce.''

In Interstate Oil Pipeline Company v. Stone, supra, 337 U. S. at page 65, Note 3, where the Court was dealing with a privilege tax upon a person operating a pipe line, it was said: ''Other provisions of the Mississippi Code not here involved impose franchise, net income and ad valorem property taxes, all of which appellant paid for the years involved. *This fact does not of course preclude Mississippi from exacting a different tax for the protection upon which one or more of these taxes is based.* E. g., Memphis Natural Gas Company v. Stone, 335 U. S. 80, 85, 68 S. Ct. 1475, 1477, 92 L. Ed. 1832.''

For the foregoing reasons we would adhere to the decision of November 24, 1952, printed in 9 Adv. S. 1, 61 So. 2d 276, and uphold the tax assessment. Hence we respectfully dissent from the decision of this date sustaining the suggestion of error.

*Lee, Kyle,* and *Arrington, JJ.,* concur in this dissent.